No. 19,271.

ANITA P. PACKARD et al., *Appellees*, v. CLARENCE E.
PACKARD et al., *Appellants,* et al.

SYLLABUS BY THE COURT.

1. ADVANCEMENTS—*Conveyances by Father to Children—Competent Evidence to Show the Father's Purpose.* The presumption that a grant of eighty acres from a father to a minor son was an advancement may be overcome by surrounding circumstances, and by parol evidence of statements made by the father either before or after the grant, following *Martin v. Shumway,* 89 Kan. 892, 132 Pac. 993.

2. SAME—*Presumptions that a Grant of Land was an Advancement—Overcome by Parol Testimony.* The presumption that a grant of ninety acres from a father to two minor children was an advancement may be overcome by surrounding circumstances and by parol testimony of a district judge who divorced their father and mother and who influenced the father to deed the property direct to them for their support, maintenance and education rather than to their mother whom he thought an unfit person to hold the title.

3. SAME—*Partially Controlled by Equitable Considerations.* In this state, the presumption that a gift by a father to his child is intended as an advancement is not statutory but is merely a rule of law adopted by the courts in furtherance of an equitable division of his property among his children, and this presumption should not be so strong or so hard to overcome as to bring about the inequitable result which such presumption was intended to prevent.

Appeal from Dickinson district court; ROSWELL L.
KING, judge. Opinion filed June 12, 1915. Reversed.

*C. E. Rugh,* of Abilene, and *W. S. Roark,* of Junction
City, for the appellants.

*C. S. Crawford, G. W. Hurd, Arthur Hurd,* and *Bruce
Hurd,* all of Abilene, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal which involves the
law relating to advancements made by a parent to three
of his children and a consideration of the pertinent

facts which determine whether certain conveyances made to them in their early childhood were outright gifts or advancements to be charged against them in the division of their father's estate.

The litigants are the children of August Packard; the plaintiffs were born of one mother and the defendants of another.

August Packard lived for many years in Dickinson county. He was an ignorant and curious man, but he seems to have been a money maker, and had a talent for accumulating land. He had a wife and four children, and was divorced from her about twenty-five years ago; and when divorced the court gave this wife about three hundred acres of his land. Soon afterwards a man and wife named Mr. and Mrs. Mott came to live with Packard. Later Mott disappeared, and Mrs. Mott continued to live with him. In time a child, Clarence, was born to Packard and this woman, and three or four years afterward another child, Elmer, was born. About that time he married Mrs. Mott, and afterwards a little girl, Pearl, was born.

The first wife and her family lived not far away on the land awarded to her by the court. When Clarence was a very small boy his half brother accidentally chopped off three of Clarence's fingers. The father took this very much to heart. Clarence was his favorite child, and he grieved over it because the boy would not be able to be a farmer and he wanted to give him an education and "make him even with the balance of the children." So he procured eighty acres of land for Clarence and caused a deed to be made directly to him when he was a very small child.

A few years later, and while Elmer and Pearl were still quite young, Mrs. Mott Packard brought suit against Packard for divorce. During the divorce trial and after the evidence was concluded, but before the court gave its judgment, the father deeded to Elmer

and Pearl about ninety acres of land, providing that the rents and profits on the land should go to their mother until Elmer was twenty-one years old, and thereafter one-half the rents and profits should go to their mother until Pearl was eighteen years old. When this conveyance was effected the final judgment and journal entry in the divorce case were made awarding Mrs. Packard sixty-seven acres of land.

The years passed, and Packard died without a will. The children of the first wife brought suit in partition for a division of the property, and alleged that the eighty acres of land given to Clarence and the ninety acres of land given to Elmer and Pearl were advancements and should be charged against them in the division of the estate. Plaintiffs also alleged that Elmer was not an acknowledged son. That last contention was groundless, and the trial court very properly disposed of it. However, the trial court held that these lands were advancements to these children, to be taken into account in the division of the estate. From such decision the defendants have appealed.

The legislature has covered the subject of advancements very briefly. The statute merely provides that property which has been given by way of advancement shall be charged against the heir when the estate is divided. (Gen. Stat. 1909, §§ 2959, 2960.) It does not prescribe how the fact of an advancement shall be determined nor on whom should fall the burden of proof. Neither has the subject provoked much litigation in this court. The principal cases are: *Brook v. Latimer,* 44 Kan. 431, 24 Pac. 946; *Johnson v. Eaton,* 51 Kan. 708, 33 Pac. 597; *Goodnough v. Webber,* 75 Kan. 209, 88 Pac. 879; *Plowman v. Hughes,* 81 Kan. 210, 215, 105 Pac. 692, 106 Pac. 279; *Burns v. Burns,* 87 Kan. 19, 123 Pac. 720; *Martin v. Shumway,* 89 Kan. 892, 132 Pac. 993. In *Brook v. Latimer,* supra, the court commented on the fact that our statutes established no rule of evidence by which the fact of ad-

vancement can be shown.  An examination of authorities shows a direct conflict as to the burden of proof. Thus in 14 Cyc. 164 it is said:

"The donor must have intended the property as an advancement or it will not be effectual as such in the absence of a statute to the contrary."

(See, also, authorities collated in 1 Words & Phrases, pp. 220, 221.)

On the other hand, that new work says that a substantial gift from a parent to a child will be presumed to be an advancement.  It adds:

"A transfer of land by a parent during his lifetime to a child will be presumed to constitute an advancement of a portion or the whole of that child's share in the parent's estate, where the consideration expressed is nominal, and natural love and affection."   (1 R. C. L. 668.)

We think that this conflict of authority arises largely because of statutes.  For instance, in Massachusetts the statute provides that the intention of the advancement must be proved.   (*Osgood v. Breed's Heirs*, 17 Mass. 356, 358.)   In New Jersey, on the other hand, the statute says that a gift of land by a father to a child shall be presumed to be an advancement.  (*Hattersley v. Bissett*, 51 N. J. Eq. 597, 29 Atl. 187, 40 Am. St. Rep. 532.)

With the passing years and without any statute, it would appear that this court has inclined to the latter view.  In *Martin v. Shumway*, supra, it was said:

"The parent's actual purpose is the very matter of inquiry, and the supposition that he intends equality results only from a rebuttable presumption."   (p. 894.)

And that is a very fair place to leave it.  But we would not say that such a presumption should be a very burdensome one to overcome.  The attendant circumstances, the inferences, the direct evidence when there is any, and the net result on broad equitable principles —all these should be liberally considered.  Cases will

not be wanting where the grantor never gave a thought to the result of his bounty, or whether it would be a subject of controversy after he had gone to his grave.

An advancement usually takes the form of a grant of land or gift by a parent to a grown son to start him in business or to a grown daughter on the occasion of her marriage, but even in those cases, where no statute controls, the presumption that the gift is an advancement is not strong. Moreover, where such gifts are made to adults, it will ordinarily be no great burden for them, knowing all the facts, to produce evidence on the question of advancement or outright gift. A too rigid application of this rule of presumptions as to gifts to small children will frequently result in injustice. If they received these gifts at an age when they had no memory of the circumstances, the burden of overcoming a strong presumption could scarcely be borne.

Touching another phase of the law as affecting the instant case, it was properly concluded in *Martin v. Shumway*, 89 Kan. 892, 132 Pac. 993, that in this state there is no hard-and-fast rule that the declarations of the grantor, offered to show his purpose in making a deed, may never be received after its execution. The syllabus reads:

"Upon the issue whether a deed made by a father to a son was a preferential gift or an advancement, subsequent statements of the grantor are admissible in evidence, if they tend to show what his purpose was at the time of its execution, regardless of which side of the controversy they support."

Applying these observations to the case before us, we have no difficulty in determining that the eighty acres which August Packard procured and caused to be conveyed direct to Clarence, the little boy who had the misfortune to have his hand mutilated, was an outright gift and not an advancement. Not only the attendant circumstances but the positive testimony was

to that effect. One witness heard the father say that he was going to deed eighty acres to Clarence as he would never be able to run a farm with one hand, that he wanted to give him an education and the income from that land. The mother was heard to say: "Tend to that. Are you going to tend to that right away?" And the father answered: "I will tend to it as soon as I go to town." Another witness testified to a conversation with the father concerning the deeding of the eighty acres to the boy Clarence. "He (the father) told me . . . that he never had a deed to it; in other words, that he had had it deeded to the boy from the owner in order to make him even with the others, so he would be even with the balance on account of that crippled hand."

Some of this testimony related to conversations with the father after the transaction, but even so it was clearly admissible under *Martin v. Shumway*, supra.

Keeping in mind that we have no statutory presumption of advancements in this state, and that at most it is only a precautionary presumption imposed by the wisdom of the courts, and merely a rebuttable presumption as said in *Martin v. Shumway*, 89 Kan. 892, 132 Pac. 993, the circumstances, the inferences and the testimony clearly rebutted any presumption that Clarence's eighty was intended by his father as an advancement and not as an outright gift. Nor have we any doubt that the district court would have reached the same conclusion if it had believed the doctrine laid down in the syllabus of *Martin v. Shumway*, supra, to be settled law in this state. This takes nothing from the general rule that this court will not disturb a trial court's finding of fact based upon conflicting testimony.

Coming now to the question whether the ninety acres conveyed by the father to Elmer and Pearl in the midst of the divorce proceedings instituted by their mother: The situation at the conclusion of that litiga-

tion was the separation of the father and mother. The father gave the mother sixty-seven acres of land and the rents and profits of the ninety acres deeded about the same time to the two small children, Elmer and Pearl, the mother to enjoy these rents and profits until the children attained their majority. The circumstances and admitted evidence were not sufficient in the opinion of the district court to overcome the presumption that the grant of ninety acres was an advancement to the children. The defendants offered to prove the situation in which the first family of Packard was placed at the conclusion of the litigation which divorced him from his first wife. She and her children were awarded about three hundred acres of Packard's land. To be sure, the mother was given the title to the land, but where the courts have created a presumption concerning advancements for the purpose of dealing with these matters in a broad and equitable way, it was a proper circumstance to be considered as showing Packard's intention in dealing with such matters. The children of the first wife will naturally acquire this land when their mother is done with it. Without levity, we might ask what was the custom and intention of Packard when he was getting rid of his wives and their offspring? Did he intend to discriminate between his first family and his second? There could be no presumption of such an intent.

About the time of Packard's second divorce, he was accosted by a friend:

"How is everything, Gus? You still have a whole lot of trouble with women?

"Packard: Yes, it seems that I do, but I always have enough to pay out."

How was he paying out? Partially or impartially? His first wife and her four children were dismissed with three hundred acres of land. Were his second wife and her three children dismissed with only sixty-seven acres and a couple of tracts as "advancements"?

The sixty-seven acres to the second wife, the eighty acres to her son Clarence, and the ninety acres to Elmer and Pearl would comprise two hundred thirty-seven acres. This would be a tolerably fair apportionment to each of his families, considering the fact that the first wife had one more child than the second, but highly unfair to the second family of children if part of the grant to the second family is to be charged to them as an advancement, on the mere technical ground that the title was vested in the children instead of in their mother, as was done in the case of Packard's separation from his first wife. When these two widows die, what will be the natural and probable situation of these rival families of children of August Packard? The first family will inherit three hundred acres which their father or the divorce court bestowed on their mother, and four-sevenths of all his other property. The younger family of children will inherit only sixty-seven acres which their father or the divorce court bestowed on their mother, and three-sevenths of their father's property. And this unfair result is brought about by the invocation of a presumption of law adopted by the courts of this state precisely to prevent such an inequitable result. The result being wrong, at least highly inequitable, let us see if the cause can be located. On the evidence adduced, the district court decided that it was not sufficient to overcome the presumption that the grant to the children, Elmer and Pearl, was an advancement. This grant was ninety acres, and they took it in their early infancy burdened with a charge of all its rents and profits to their mother during their minority. The defendants offered to show by the district judge's notes in the second divorce trial that the deed to Elmer and Pearl was executed after the evidence in that case was submitted and before judgment. This was excluded on the ground that the judge's notes "are not evidence of anything," and because "there is no provision of the stat-

ute for the admission of the memorandum that the judge keeps."

This carries the matter entirely too far. True, the judge's notes are not a part of the record, but they have at least the same evidential potency as the entries of a private diary or memorandum kept by any reputable person. They may be presumed to be a trustworthy chronicle of events as they transpired in the course of the trial. They were competent as evidence to show whether there was a lapse of a few days between the conclusion of the evidence and the rendition of the judgment if the record is silent on that subject. This takes nothing from what has been said in *Pennock v. Monroe*, 5 Kan. 578; *Chemical Co. v. Morrison*, 76 Kan. 799, 803, 92 Pac. 1114; *Gilmore v. Salt Co.*, 92 Kan. 18, 20, 139 Pac. 1168.

We think it highly significant that this grant of ninety acres to Elmer and Pearl was made in the midst of the divorce case between their father and mother, and that the grant was charged with the rents and profits to their mother during their minority. The welfare, education and support of those children were the most important matters which pertained to that divorce case, and undoubtedly they had received the court's most solicitous care. These and the other circumstances which should properly be taken into account go far towards overturning the presumption of advancement.

Defendants filed a motion to set aside the judgment and to permit the introduction of further testimony which would tend to overcome the presumption of an advancement. It was to this effect: The former district judge, who granted the second divorce, would testify that the conveyance to Elmer and Pearl was made pursuant to his direction; that he had suggested that he intended to require Packard to give a certain portion of his real estate for their support, maintenance and education; that as this judge remembered it, it

was to be not less than eighty acres; and that he preferred to have the deed made to them rather than to their mother, whom he deemed an unsuitable person in whom to vest the title, and that the decree which he did enter touching the division of Packard's property took into account the fact that such provision was contemporaneously made for the maintenance, support and education of the children. Such testimony would conclusively repel any presumption of an advancement to Elmer and Pearl, and no rule of evidence is cited to show that it would be inadmissible. It is not proposed to attack the divorce judgment, but the circumstances are clearly evidential on the question of advancement. There is, however, no need of a new trial on the whole issue. (Civ. Code, § 307.) The judgment of the district court that Elmer was an acknowledged son is affirmed. The judgment that the grant of eighty acres to Clarence was an advancement is reversed on the evidence. On the question as to whether the grant of ninety acres to Elmer and Pearl was an advancement, the cause is reversed and remanded with instructions to grant the motion to set aside the judgment and to admit the further testimony outlined in the affidavit used in support of that motion.

A suggestion is made that the guardian of the minors, Elmer and Pearl, has acquiesced in the judgment against them by making a selection of lands appraised by the court and that this works an estoppel as to them. The guardian of the children had no such authority, and the inheritance of these children can not be sacrificed by any such an application of the doctrine of estoppel.

Cause remanded for further proceedings in accordance herewith.