No. 19,535.

MARTIN BALLOU, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Engineer Passing Block "Stop" Signal—Jumping to Avoid Collision—Injuries—Comparative Negligence.* Where a railway engineer on a dark and foggy morning ran his train so rapidly that he could not stop before passing a block signal which was set at "stop," and to save himself from being caught in an impending collision with the rear of another train a short distance beyond the signal, jumped from his engine and was injured, and where the company had failed to include such other train in the order furnished him listing the trains he would meet and pass, thus leading the engineer to expect no other than the "clear" signal at that place, the issue becomes in effect one of comparative negligence, and under chapter 218 of the Laws of 1911, a recovery is not barred by the engineer's contributory negligence.

2. SAME—*Prejudicial Error in Record—New Trial.* Assignment of errors considered and a new trial ordered, but its scope restricted as authorized by section 307 of the civil code.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed June 12, 1915. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*Ezra Branine,* and *Harry W. Hart,* both of Newton, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an action against the Santa Fe railway by Martin Ballou, one of the company's engineers, for injuries sustained by him in jumping from his engine to avoid being caught in an impending wreck. The circumstances were substantially as follows: Plaintiff Ballou was ordered to take an engine and caboose from Newton to Dodge City over the defendant railway's lines, via Hutchinson, Whiteside and Partridge. At Hutchinson he received a paper called a check giving him a list of the trains he would meet and pass between Hutchinson and Dodge City, but one train was omitted from the check. This was the westbound local freight train which started from Hutchinson just a few minutes ahead of him. Probably this oversight occurred because the check was made up before it was finally determined that Ballou's train should follow and not precede the freight train. The Santa Fe lines from Hutchinson west for some distance are equipped with the block-signal system, the simpler phases of which are generally understood by well-informed people. It is in brief a system for control of trains by signals. At suitable distances along the railway track are tall signal poles with movable arms for use by day and colored lights for use by night, and engineers are required to have their engines and trains under such control that they can at once respond to the signals shown at these poles. One signal means clear track and that the engineer may proceed with safety until the next signal block appears. Another signal indicates that the engineer may proceed with caution. Still another, and the most important, is the signal to stop; and the engineer is required at all times to have his engine and train under such control that he can stop his train before passing such signal. Obviously this block-signal system has two main purposes, safety in operation of trains and effective control of train movements,

When engineer Ballou left Hutchinson, the first block signal he encountered was at Hutchinson Junction, some distance west of Hutchinson. The block signal indicated clear track. This he passed at ordinary speed. The time was early morning and it was dark and foggy. The engine was using its headlight; the block-signal system was using its lights. As Ballou's train check did not indicate any train to be met until the station of Partridge, some distance west of Whiteside, and did not mention the freight train which had just preceded him out of Hutchinson, he was not expecting any other signal at Whiteside than the clear signal to proceed, and he did not have his engine under control as he approached that point. He had run at the rate of twenty or twenty-five miles an hour (perhaps more) through the block between Hutchinson Junction and Whiteside. Suddenly, through the fog, Ballou saw the stop signal at Whiteside. He was then only three or four car lengths from the signal, and at a short distance beyond the block signal he saw the caboose of the freight train ahead of him. Ballou promptly shut off the steam, applied the emergency brakes, climbed down the engine steps and jumped. He was severely injured. His train sped on, ripped into and through the caboose, and derailed three freight cars ahead of it.

The case was tried under chapter 218 of the Laws of 1911, which provides in part that the contributory negligence of an employee shall not be a defense to an action for personal injuries, but that such contributory negligence of the employee shall be considered by the jury in assessing the amount of the recovery.

The jury found that plaintiff's damages were $6000 and deducted one-fourth of that amount on account of his own negligence. The railway company had a counterclaim of $1342 against him for the destruction of its property, and the jury charged Ballou with one-fourth of that amount. The net verdict for Ballou was

$4164.50, and in effect it was a determination that the negligence of the railway company was three times as great as that of the plaintiff.

Error is assigned: (1) that plaintiff's injuries were caused by his own negligence in disregarding the rule of the company to have his train under control on approaching a block signal, a rule with which he was familiar; (2) incompetent evidence; (3) error in instructions; (4) findings of the jury.

(1) It will simplify this discussion to observe that the company's negligence chiefly lay in its failure to enter on the check, which it furnished plaintiff at Hutchinson, the freight train which was started out ahead of him. Whether this was the proximate cause of plaintiff's injuries or a contributing cause, or whether it was not the only negligence of the defendant, will be considered as we proceed. The plaintiff's negligence lay in not having his train under such control that he could stop it in obedience to the signal.

Certain rules of the company were introduced in evidence. Rule 733, in part, reads: "A train finding a block displayed at 'stop' must stop before reaching it." A block is defined by the rules to be: "A length of track of defined limits, the use of which by trains is controlled by block signals." In plaintiff's testimony he said:

"Nothing only the order and the rule in the rule book gave me any privilege to run by the block signals when they were indicating stops. I am acquainted with rule 733 providing that a train finding a block displayed at 'stop' must stop before reaching it. The signal was displayed at 'stop' at Whiteside and I went by it. The morning this signal displayed its stop I could have seen the signal about three or four car lengths. I did see it about that distance. . . . I did n't get my train under control so that I could stop it after seeing the signal three or four car lengths. I did n't, because we really had nothing to expect there at all. We had orders. I will not run by signals when I am in ignorance of what is on the other side of the signal. I

know that these block signals are to prevent you from running into things where you don't expect to. The signal would be useless in the way of giving you orders of which you already had knowledge. I jumped off, I should judge, a car length or two before I got to this signal. This was what you call a home block signal at Whiteside.   .   .   .   The stop signal signifies that there was a train in the block ahead of me, and that they possibly had orders for me, and that they should hold me until the train got out of the block."

Of course, under this state of facts, the plaintiff could not recover but for the enactment of chapter 218 of the Laws of 1911, which provides that contributory negligence shall not be a defense but only a consideration in diminution of damages. Was the plaintiff's negligence the sole cause of his injuries? The jury might properly say so, but can the court peremptorily so hold? We think not. The check furnished to plaintiff at Hutchinson showing the list of trains plaintiff would meet and pass on his journey had a purpose. It must have been somewhat in the nature of a guide, in addition to the orders exhibited to him by the signal system, as he journeyed from block to block. The check had omitted the train which had just preceded him. This misled him, so that the stop signal at Whiteside was a complete surprise. Here was a circumstance, a fact for the consideration of the jury.

(2) Error is urged in the admission of evidence.

The company had rules which regulated the operation of the block signal:

"709. A home block signal must be restored to the 'stop' indication after having been changed for a train *as soon as the rear car carrying the markers has passed the signal, if the train stops;* and if it does not stop, as soon as the markers are 300 feet beyond the signal.

"722. When a train enters a block the operator must report it to the operator in advance, and when the rear of a train has passed 300 feet within the block and he has seen the markers he will report to the operator in the rear that the train is clear of block, having first displayed 'stop' signal."

Under these rules the plaintiff had a curious theory that he not only had a clear track in the block which he had been permitted to enter at Hutchinson Junction, but for 300 feet beyond that block. Thus:

"Q. When you approached that tower or block station with the green lights showing and the arm downward, what did that mean to you as an engineer?

"The defendant objects as calling for his conclusion, the rules being the best evidence as to what it means. Overruled.

"A. It means that the block was clear 300 feet beyond the other order board.

"The defendant moved to strike out the answer as not the best evidence and contrary to the written rules that are already in evidence."

There is something wrong here. The witness had already testified: "If it was a clear signal, a green light would be displayed at an angle of forty-five degrees down. The signal at Hutchinson Junction was clear." That signal permitted the plaintiff to enter and run that block. That signal did not and could not mean that the block was clear 300 feet beyond the other order block. Rule 733 was imperatively and solely the rule which governed the plaintiff. Rules 709 and 722 on their face plainly show that they have to do with the operation of those signals. The 300 feet mentioned in the rule has to do with the location of a *passing* train. If the train stops, the "stop" signal is to be set behind it at once, not after the train has moved 300 feet past the signal, but "as soon as the rear car has passed the signal." If the train does not stop, and only in such case, the signal has to be reset when the tail-lights or train markers have passed 300 feet beyond the signal. We perceive a sensible reason for this. If the train stops, it must be protected with a "stop" signal at once. If the train does not stop, there should be no delay in the manipulation of the signal. It should be set promptly, that is, when the rear car has passed the signal 300 feet, and in order that business should not

be delayed the block behind should be opened for other traffic as soon as that block is clear.

Counsel for the railway company say that this 300 feet is a margin of safety. Partially falling in with this view, plaintiff's counsel urge that their client had a right to depend upon this margin of safety. We think not. If that margin of safety may be encroached upon as a dependable right, then it is no margin of safety. Even plaintiff himself testified:

"I am acquainted with rule 733 providing that a train finding a block displayed at 'stop' must stop before reaching it. . . . I know that these block signals are to prevent you from running into things where you don't expect to."

The defendant's objection to this testimony was well taken. The rules spoke for themselves. There was nothing indefinite about them. They needed no explanation. They will not bear the construction placed upon them by plaintiff. The block signal had to be set at "clear" to let the freight train into the block between Whiteside and Partridge. If the freight train had not stopped it would have been the duty of the Whiteside operator to have watched until the tail lights or markers had passed a point 300 feet beyond the signal and then set the signal at "stop" to bar plaintiff's train and all others from passing the signal until the freight train had run that block and until he was notified from Partridge of its arrival. Since the freight train stopped at Whiteside it was the duty of the operator, as soon as he had admitted the freight train into the block at his station, to restore the "stop" signal "as soon as the rear car carrying the markers had passed the signal." This was done.

There is a provision in the rules permitting a train, under certain conditions, to enter a block which is barred by a stop signal. Rule 733 reads:

"A train finding a block signal displayed at 'stop' must stop before reaching it. When necessary for

trains to pass the block signal in stop position to do work or to allow opposing trains on passing tracks to depart or take water and fuel, they must be fully protected by a flag in accordance with Rule 99."

But no such situation was presented in the case before us, and as this rule descends into details to specify the circumstances under which a train may pass a "stop" signal, it is a clear inference that it would have no such right under any other circumstances.

Another alleged error in the evidence reads:

"Q. With train No. 77 at Whiteside or east of it, what signal should the Hutchinson Junction have given you as you approached it?

"The defendant objects, as calling for the conclusion of the witness, incompetent, irrelevant and immaterial, and covered by the rules. Overruled.

"A. We should have gotten a caution signal at the junction."

This was not in accordance with the rules, nor upon any intelligible theory as to the operation of the block-signal system. Why should not a clear signal have been set at Hutchinson Junction? There was no other train or impediment in the block between that point and the Whiteside signal pole. The freight train had arrived at Whiteside. Such testimony was incompetent, and we fear it was prejudicial. The defendant sought to offset it by one of its witnesses. Superintendent Tice was asked:

"Q. Is there any circumstance or rule, in the books or out of your books, that authorizes a train crew to run by a block signal when the signal is in position calling for a stop?

"By the Plaintiff: We object to that as incompetent, irrelevant and immaterial, and calling for the conclusion of the witness and not facts, not the best evidence, and the witness not competent or qualified to testify upon that question, and the question is argumentative in form. The printed rules of the Company speak for themselves.

"By the Court: The objection is sustained. Defendant excepts.

"Q. I would like for you to tell whether a block that belongs to this block system extends beyond the block signals either way?

"By the Plaintiff: We object to this; it is the same objection that counsel made in chief.

"By the Court: The objection is sustained. Defendant excepts."

These rulings were correct, but they also show why the plaintiff's testimony on the same point was likewise inadmissible. There was little evidence as to when a "caution" signal should be displayed, but it was to the effect that it should be used when two trains going in the same direction are permitted in one block.

(3) Complaint is made concerning instructions given and refused. One serious question which we perceive relates to the twelfth instruction which was given:

"12. The jury are instructed that if you believe from the evidence, by the preponderance thereof, that on the 25th day of January, 1912, the plaintiff, while operating a locomotive of the defendant, as engineer, on the defendant's railway track out of Hutchinson, Kansas, found a signal at the Hutchinson block station, which signal told him, according to the rules and custom of the defendant company, *that the track was clear for a certain distance beyond and west of said signal,* the plaintiff had the right to assume that the defendant had performed its duty by keeping and having the said track clear within the distance indicated by said signal, but it was still plaintiff's duty to exercise ordinary care after entering into said block and while passing over the same."

This instruction involves the error of which we have spoken. Neither the rules nor the competent evidence justify even an inference that the plaintiff might assume from the "clear" signal at Hutchinson Junction that the track was clear for 300 feet, or for any other distance, beyond the Whiteside signal tower. When plaintiff had brought his train into visible distance of the Whiteside signal, whatever showing it made was

49—95 KAN.

to be his guide, and the signal he had received at Hutchinson Junction did not in any manner relate to the situation or to his proper conduct in approaching Whiteside.

Defendant also has a grievance touching the findings of fact. The pertinent findings are:

"Q. 1. If you find for the plaintiff, state the exact negligence of which defendant was guilty upon which you base your verdict. A. 1. Plaintiff received orders at Hutchinson station for clear track to Partridge and not being notified of No. 77 being ahead. Improper display of signals at Hutchinson Junction. Train No. 77 did not put out proper precautions at Whiteside station.

"Q. 2. If you find that the plaintiff and defendant were both guilty of negligence, contributing to the injury complained of, state which was guilty of the greater negligence. A. 2. Defendant.

"Q. 3. State the total amount of damages, if any, sustained by plaintiff. A. 3. $6000.00.

"Q. 4. After determining the total amount of damages sustained by plaintiff, if any, what amount do you deduct therefrom, if any, on account of any contributory negligence on his part? A. 4. $1835.50—

$\frac{1}{4}$ of $6000.00 . . . . . . . $1500.00
$\frac{1}{4}$ of  1342.00 . . . . . . .   335.50

Total . . . . . . . . . . . $1835.50

"Q. 5. If plaintiff was guilty of contributory negligence in the premises, state in what such negligence consisted. A. 5. Not having engine under full control.

"Q. 6. State amount of damage, if any, defendant sustained on account of any negligence of plaintiff in causing the collision in question. A. 6. $1342.00 according to their statement.

"Q. 7. Did plaintiff violate defendant's rules in running by Whiteside station while the stop signals were displayed at said station? A. 7. Sufficient evidence has not been shown that he did. No."

Part of the answer to question No. 1 is erroneous. We have already said that there was no improper display of signals at Hutchinson Junction. The rest of the answer relates to the suggestion that other pre-

cautions than the "stop" signal should have been made at Whiteside; that torpedoes and a rear flagman should have been used. As we understand it, the use of torpedoes and a rear flagman have no relation to station stops when those are guarded by the block signal which absolutely bars the advance of a coming train. Rule 99 in part provides:

"99. When a train stops or is delayed under circumstances in which it may be overtaken by another train, the flagman must go back immediately with stop signals a sufficient distance to insure full protection.

"The general rule for protecting a train or obstruction by flag requires the flagman to proceed back rapidly with danger signals for a distance of one-half to one mile (18 to 35 telegraph poles), the distance increasing for descending grades and weather conditions, and until he can have an unobstructed view of an approaching train for at least one-quarter of a mile beyond, where he must remain until called by the whistle of his engine, as per rules 14 (*d*) and (*e*), or if an approaching train is within sight or hearing, until it has stopped.

"At the point to which he is required to proceed, or on the approach of a train before that point is reached, he will display proper stop signals and, in addition, place two torpedoes on the rails opposite each other so as to make one report," etc.

It will be observed that the flagman must go back "when a train stops or is delayed under circumstances in which it may be overtaken by another train." Surely it can not be that in modern railroading, every time a local freight stops at a station and when that train is protected by a block "stop" signal behind it it is necessary for a flagman armed with flags and torpedoes to go back half a mile to guard it against a rear-end collision. The imperative "stop" signal was the proper and sufficient precaution. The torpedoes and rear flagman are usually for the protection of a train between the signal blocks or where there is no block-signal system.

The second finding of fact is subject to some criticism. The jury declared that the defendant's negligence was greater than the plaintiff's. Elsewhere the jury's estimate of their comparative negligence is shown to be as three to one. Maybe so, if in addition to the defective train check furnished plaintiff at Hutchinson there had been in fact an improper display of signals at Hutchinson Junction and if there had been in fact some failure in defendant's duty to put out torpedoes and a flagman at Whiteside. The comparative negligence of plaintiff and defendant was a proper consideration for the jury, but here were two elements of alleged negligence against the defendant improperly submitted to the jury.

Doubtless the evidence was sufficient to prove the damages sustained by the plaintiff, and that is not complained of. But the fourth finding, which declares that only one-fourth of the damages to plaintiff and property should be chargeable to plaintiff, can not stand. We are aware that this is a jury question, but a manifestly unconscionable verdict, in effect that the negligence of the defendant was three times that of the plaintiff, can not stand. The only negligence of defendant established by competent testimony was its failure to give plaintiff a complete list of all the trains he would meet and pass.

As was said in *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555, some of the answers of the jury "seem to show a captious spirit." (p. 76.) This is true of the answer to the seventh special question. Since the plaintiff admitted the violation of this rule and the proof was all to that effect, it was neither fair nor true for the jury to answer it as they did.

What disposition shall be made of this case? That it must be reversed is obvious. We are urged to order judgment for the defendant, but we do not see how this can be done. There is still the issue of comparative negligence, a question of fact, in this case, which

plaintiff has a right to submit to a jury. So far as this record goes the defendant company was negligent in furnishing plaintiff an inaccurate schedule of the trains he would encounter. The negligence of the plaintiff consisted in running his train in such a manner that he could not control it and stop it before he passed the Whiteside stop signal. On this issue of comparative negligence, its incidents and consequences, there must be a new trial. But it is unnecessary to go over the whole matter again. The finding as to the plaintiff's damages, $6000, should stand. The finding as to the defendant's damages occasioned by the wreck, $1342, should likewise stand. This limitation of the scope of a new trial is sanctioned by the civil code (§ 307), and this seems a proper occasion to lighten the burden of the district court and the expense and labor of the litigants by its application.

It is so ordered.

BURCH, J. (dissenting in part) : The negligence of the defendant in furnishing the plaintiff an inaccurate schedule of trains did not contribute to the collision. The sole cause of the collision was running by a stop signal in disobedience of a rule which was imperative whatever train list the plaintiff had received. Therefore judgment should be ordered for the defendant.

Mr. Justice PORTER concurs in this dissent.