No. 21,524.

THE FEEDERS SUPPLY COMPANY, *Appellant*, v. THE FIRST NATIONAL BANK OF SEDAN, *Appellee*.

### SYLLABUS BY THE COURT.

1. DRAFT—*Forwarded to Bank for Collection—Duty of Bank.* It is the duty of a bank accepting the task of collecting a draft to use reasonable diligence in presenting and reporting on such instrument to the sender.

2. SAME—*Want of Diligence Shown.* The undisputed facts set forth in the opinion show that such diligence was not used by the defendant, and that such failure damaged the plaintiff.

3. SAME—*New Trial Ordered.* A new trial to ascertain the amount of damages is ordered.

Appeal from Chautauqua district court; ALLISON T. AYRES, judge. Opinion filed November 9, 1918. Reversed.

*J. E. Brooks,* and *C. O. Buckles,* both of Sedan, for the appellant.

*Carl Ackerman,* and *J. A. Ferrell,* both of Sedan, for the appellee.

Supply Co. v. Bank.

The opinion of the court was delivered by

. WEST, J.: The plaintiff sued the defendant bank for damages for negligence in failing properly to look after a collection, and failing to recover, he appeals, assigning various errors, but urging the one point, that the defendant's explanation is not sufficient to excuse its negligence.

October 27, 1914, the plaintiff shipped from Stroud, Okla., to W. H. Leniton, at Lowe, Kan., a carload of cottonseed meal, the accepted order reciting:

"Price is made F. O. B. cars, Lowe, Kans. Prepay freight. Banking instructions. 1st Natl. Bk. Sedan, Kansas. Terms, sight draft with Bill of Lading attached."

On the following day the company, through the First National Bank of Sedan, Kan., drew on Leniton for the contract price, $491, the draft being in the following words:

FEEDERS SUPPLY CO., No. 7156.

KANSAS CITY, Mo., Oct. 28, '14

At sight pay to the order of Interstate National Bank, Four Hundred Ninety one $^{no}/_{100}$ Dollars.

Bill lading attached for car 12460 S. F. C. -S. and to remain with draft until paid.

Value received and charge to account of

To W. H. Leniton,

Sedan, Kan. Collect through First National Bank.

FEEDERS SUPPLY CO.,

By C. S. NATHAN, Cashier.

The Interstate National Bank of Kansas City forwarded the draft with a letter containing the following:

"Hold no item, unless we so instruct; but protest and return at once all not promptly honored. Deliver documents only on payments of drafts attached."

The draft was held by the defendant bank, without presentation or demand for payment, until December 14, 1914, when it was returned to the forwarding bank with the following indorsement:

"Our information is that this shipment has been received by Leniton. Car been fed to his cattle. Mr. Leniton died two weeks ago. First Nat'l Bank."

The answer pleaded, among other things, that Leniton lived twelve miles from Sedan, his post-office address being Wau-

neta, Route 1; that it ordinarily took from four to six days, and sometimes longer, to send a letter from Sedan and get a reply thereto; that during the latter part of October and all of November, Leniton was sick; that he died on the 30th of November, having been taken to a hospital at Winfield on the 4th of that month; that upon receipt of the draft the officers of the bank notified Leniton thereof, and were advised that he was ill and as soon as he was able to do so he would come to Sedan and pay it or arrange for its payment; that the officers of the bank soon after this learned that Leniton had gone to the hospital, "and for that reason held said draft for some days pending the recovery of Mr. Leniton, or his directions from someone to look after the matter of taking up and paying said draft."

It was further alleged that the shipment was made in such manner that the consignee could and did take the cottonseed meal as soon as it arrived at its destination, regardless of the acceptance or the payment of the draft; that it arrived at Lowe on the 31st of October and was received and unloaded by Leniton prior to the day on which the defendant should have presented the draft; and that defendant could not have presented the draft in the regular course of business and made reply in time for the plaintiff to prevent the consignee from taking the meal and using it.

Although the meal was consigned to the seller, and not to the buyer, it appears that, by some person not disclosed and in some manner not explained, the meal was unloaded and fed to the consignee's cattle. The railroad agent did not even know whether the meal was left long enough for a demurrage charge to arise, but he testified that if the car had stood there any length of time there should have been a demurrage charge, and from his testimony it appears that the car was set out October 31.

One peculiar feature of the case is that no bill of lading was attached to the draft, and if one was ever issued, it does not appear what became of it. There was attached a document, referred to often in the testimony as a bill of lading, which on its face appears to be a memorandum "for use in connection with the standard form of straight bill of lading," approved by the interstate commerce commission, and it is an acknowl-

edgment that a bill of lading had been issued, and that it is not the original bill of lading nor a copy or duplicate, but is' intended solely for filing or record. This instrument, however, recites that there was received, subject to classifications and tariffs in effect on the day of the receipt by the carrier of the property described in the original bill of lading, a carload of cottonseed meal consigned to the Feeders Supply Company, Lowe, Kan., and that $68 to apply on prepayment of the charges had been received. This document accompanied the draft when it was sent to the defendant bank. There was also testimony fairly tending to show that the forwarding bank had sent out a number of tracers before the draft was returned. It also appeared that it was the custom of the defendant bank to notify the company to whom drafts were sent for collection; that a printed form was used giving a description, which was usually either mailed out or word sent by telephone; and that Mr. Leniton had a telephone at his house with Sedan connections.

It is argued that the defendant was not negligent, and even if it were, such negligence did not cause any damage to the plaintiff. It is contended that, as the plaintiff and the bank undertook to send a sight draft against the shipment protected by the usual bill of lading, and so instructed the defendant in the draft itself, and sent along a piece of paper purporting to be the bill of lading, it was not negligence to assume without careful investigation that it was such and that it would have to be obtained by Leniton or by any one in order to get possession of a shipment, "and the defendant had the further right to assume that being protected in this manner there was no special hurry required on its part in the matter of presenting the draft for collection or in reporting to the sender." There was evidence that other shipments were not remitted for until the lapse of some forty days, or that the delay in this instance was only reasonable. It is further urged that the direct cause of the plaintiff's damage was the fact that the shipment was made on such terms and under such instructions that Leniton could and did unload the meal without first accounting to any one for the purchase price; in other words, that the plaintiff did not attach the original bill of lading as it represented to the defendant that it had done, and that this failure was con-

tributory negligence on its part, rendering it possible for Leniton to get the shipment as soon as it reached its destination, without power on the part of defendant to prevent it; that it was even possible for Leniton to get the meal before the draft was received by the defendant bank; and that the fact that the instructions accompanying the draft contained a notation that it was to be handled without protest was "an additional slackening of the responsibility ordinarily imposed in sending a draft to a bank for collection."

It was admitted that from the 30th day of October until the 14th day of December, 1914, the defendant bank held a chattel mortgage on six head of native cows and other property described in a mortgage from Leniton to the bank. The plaintiff offered to show that the meal was fed to this stock, but the offer was refused.

Whatever the effect of attaching to the draft another instrument than the original bill of lading, the bank could not help understanding that the draft was sent to it for collection; that the feed had been shipped; and that the collection would be due on its delivery, which would naturally be prompt upon its arrival. It certainly owed the plaintiff the duty of using reasonable diligence to carry out the agency it had been called upon to exercise, and it is difficult to see on what theory the practical inaction during all those weeks, until some time after the death of Leniton, can be justified.

"The collecting bank must act in good faith, exercise reasonable skill in performing its duties, and use due care and diligence in making prompt presentment, demand, and protest, in giving notice of dishonor and in taking whatever steps are necessary to protect the customers' rights or it will be liable for loss. It must forward the check for presentment by a direct route and not indirectly by circulation through branch banks or otherwise." (7 C. J., 610.)

"When commercial paper is delivered to a banker for collection, the banker becomes the customer's agent to make collection, and he undertakes the duty of an agent for all purposes of making the collection. As in case of other collecting agents, the bank is required to use ordinary or reasonable diligence and care in making the collection; and if from its failure to do so, loss results to its customer it is liable to him in damages therefor." (3 R. C. L. 610.)

It is claimed that, even if negligent, the defendant bank did not cause the plaintiff any loss which it would not otherwise have incurred. It appears, however, that Leniton was a man

who handled cattle, having mortgaged a number of head to the bank; that the consignment of the meal in question was somewhat promptly taken from the railroad station and fed to Leniton's stock; that after an illness of some weeks, and a stay in the hospital at Winfield, Leniton passed away; and that afterwards there was collected upon this claim from his estate only $127.82, leaving a balance at the time of the trial of $433 unpaid. It is hardly possible that had the plaintiff been handling this collection for itself it would' have permitted all these things to happen before requiring payment, and' it is unreasonable to believe that the delay of the defendant bank did not occasion the loss, or a considerable portion thereof.

The undisputed facts render the defendant liable as a matter of law, and the judgment is reversed with directions to grant a new trial for the one purpose of ascertaining the extent of such liability.