No. 38,420

CONNIE HUKLE, *Appellee*, v. CARL R. KIMBLE and JOYCE W. MINSON, a Partnership, doing business as M & K Truck Line; CARL R. KIMBLE: JOYCE W. MINSON; HOME MUTUAL INSURANCE COMPANY OF IOWA, *Appellants*.

(243 P. 2d 225)

Opinion filed April 12, 1952.

*H. E. Jones,* of Wichita, argued the cause and *A. W. Hershberger, J. B. Patterson, William P. Thompson* and *Richard Jones,* all of Wichita, were with him on the briefs for the appellants.

*Clarence N. Holeman,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson* and *Keith L. Wallis,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages alleged to have been sustained when plaintiff was caught between a truck driven by one of defendants and a pillar in the driveway of an elevator where plaintiff was employed. Judgment was for the plaintiff. Defendants have appealed.

The case was here before. (See *Hukle v. Kimble*, 169 Kan. 438, 219 P. 2d 434.) At that time the trial court sustained a demurrer to plaintiff's evidence. Plaintiff appealed. We reversed and directed the trial court to proceed with the action.

The petition alleged first the residence of the parties, that Minson and Kimble were holders of a common-carrier permit and as a prerequisite to the issuance of this permit the state corporation commission required a liablity policy of insurance to be filed with the commission; that Minson and Kimble did obtain such policy from defendant insurance company and filed it with the commission; that this policy provided the company would pay any damages incurred as a result of the negligent operation of a certain 1944 Chevrolet truck; that Kimble and Minson were operating as a partnership under the name of M & K Truck Line on November 30, 1946. The petition then alleged that on November 30, 1946, plaintiff was employed by the Mulvane Cooperative Union and was performing the duties of his employment when defendant Kimble drove his truck into the elevator and against plaintiff in a negligent manner and crushed plaintiff against a cement pillar; that Kimble was guilty of negligence, in operating the truck with insufficient lights, in failing to keep a lookout, in operating the truck with faulty brakes, in operating the truck so that he could not stop when he saw, or could have seen, plaintiff, in failing to allow sufficient clearance between the truck and the cement pillar, in driving at an excessive rate of speed, in driving into the elevator before he was authorized to do so, in operating the truck of a width in excess of that allowed by law, in failing to stop immediately when he saw, or should have seen, plaintiff, in running into plaintiff and crushing him against the pillar; that one or more of these acts of negligence were the proximate cause of plaintiff's injuries; that Kimble was operating the truck for himself and Minson, his partner, and the defendant insurance company was liable under its policy. The petition then alleged plaintiff's injuries. The prayer was for damages in the amount of $31,055.76.

The defendants filed a joint answer in which they denied all facts not admitted; they admitted the residence of the parties and the issuance of the policy; they denied specifically that at the time of the damage the truck was being operated pursuant to a common-carrier permit; that Kimble and Minson were operating as a partnership; and that on November 30, 1946, Kimble was operating the truck on behalf of Minson. The answer then alleged that plaintiff was guilty of contributory negligence in walking into the path of the truck, in failing to keep a proper lookout, in entering the truck passageway through the elevator when he knew, or should have known, the truck was passing through the passageway, in failing to give warning to other users of the passageway of his intention to enter it.

At the close of plaintiff's evidence the defendants demurred to it generally, on the ground it did not show facts sufficient to prove a cause of action in favor of the plaintiff and against the defendants and proved the plaintiff to be guilty of contributory negligence.

Defendant Minson demurred specially on the ground the evidence showed affirmatively he did not have any interest in the operation of the truck. These demurrers were overruled.

The jury returned a general verdict in favor of the plaintiff. The defendants moved for judgment notwithstanding the verdict on the ground the evidence did not disclose any negligence on the part of the defendants; that it affirmatively showed the plaintiff was guilty of negligence, which was the proximate cause of his injuries; that their demurrer to the evidence should have been sustained; and that it affirmatively appeared that Minson was not a partner of the defendant Kimble.

Defendants also filed a motion for a new trial on the ground of misconduct of the jury, erroneous rulings, erroneous instructions, the verdict was contrary to the evidence, newly discovered evidence, the demurrer to the evidence should have been sustained; and the court erred in giving Instruction No. 8. Both these motions were overruled. On the hearing of the motion for a new trial evidence was heard upon the question of whether or not the verdict was a quotient verdict.

The specifications of error were that the court erred in not sustaining the demurrer to the evidence, not sustaining the special demurrer of defendant Minson, in submitting erroneous instructions, in not sustaining the defendant's motion for judgment notwith-

standing the verdict, and not sustaining defendant's motion for a new trial.

Defendant argues first, plaintiff's evidence did not show Kimble, the driver of the truck, was guilty of any negligence, the negligence with which he was charged was operating the truck with insufficient lights, failure to keep a lookout, operating the truck with faulty brakes, failing to allow sufficient clearance between the truck and the cement pillar, driving at an excessive rate of speed, driving into the elevator before he was authorized to do so, in operating a truck of a width in excess of that allowed by law, in failing to stop immediately when he saw, or should have seen, plaintiff, and in running into plaintiff and crushing him against the pillar.

There are some physical facts about which there is no dispute. They will be stated now.

The injury occurred in what is commonly known as the driveway of a grain elevator. It runs north and south. There is a door at each end. There is an electric light in the driveway but it was not on at the time. The driveway is about sixty feet long. Trucks loaded with grain enter at the south door, unload at a dump located about midway, and drive empty out the north door. The plaintiff was about forty feet north of the south door when hit. This was the door at which the truck entered the driveway. It was headed north. There is a doorway on the east side of the driveway opening into a feed room. There is a compressor switch just inside the doorway about six inches from the edge. As one comes from the feed room through this doorway into the driveway there are pillars about one foot on each side of the doorway. These pillars project into the driveway about 9½ inches. The driveway is about nine feet, four inches wide between the pillars. The truck was about eight feet wide.

The plaintiff had learned from a conversation between the truck driver and his employer that his employer was going to buy the load of corn with which the truck was loaded. He left the office and went to the driveway. He opened the south door of the driveway, which was the door through which the truck loaded with corn would enter. He swept some corn into the dump with a broom and was walking toward the south door of the driveway to open it when he was struck. Mr. Kimble had been on the premises prior to that time. Plaintiff did not signal the driver to enter and Kimble did not sound his horn and there was evidence that his truck lights

were not on. There is no controversy about the foregoing. The plaintiff testified that generally trucks were motioned to come in when the operator was ready for them to enter. He testified he was hit at the pillar just north of the driveway and that he first knew he was in danger when the front fender of the truck brushed his leg; that he attempted to move aside and he was caught between the corner of the truck and the pillar and that defendant Kimble was the first to reach him, and stated he did not see him "I was watching the other side of the truck or driveway." The plaintiff testified that Copeland, the manager of the elevator, his employer, had to go round to the left side of the truck to reach him and had no difficulty in doing so.

On cross-examination plaintiff testified he knew that when a truck was passing the pillars there wasn't room enough for a man's body between the truck and the pillars; that he knew when he saw the truck on the scales that it was going to come on the driveway. He testified that when he left the office he went into the driveway and opened the south door; that there was a light in the driveway but he didn't turn it on because with the south door open he did not need it; that he went to the dump which was in the center of the driveway and swept some grain into it. He further testified "I next saw Mr. Kimble when I shut the door to the dump, turned around to turn on the air compressor"; at that time the truck was about thirty feet from him; his front wheels were right in the door and he thought the truck was moving. He then testified about the pillars and that he had taken about three steps when the truck hit him. He testified that the south pillar was between him and the truck; that he was facing east and was not looking in the direction of the truck; that he had turned left and started toward the north door; that as he started north he stepped out from behind the pillar and did not look to the south to see where the truck was, and the next thing he knew the truck's fender brushed him and he was caught between the corner of the bed of the truck and the southwest corner of the pillar just north of the driveway.

The defendants recognize we held the evidence in a former record sufficient to require the submission of the issue of negligence to the jury. They argue, however, the evidence in this record was sufficiently different from that at the former trial so that the holding there is not binding here. They rely in the main on the fact that in the former record the plaintiff testified the last time he saw the

truck it was turning to come in the south door while in this record he testified the front wheels of the truck were in the south door of the driveway when he last saw it. They make the categorical statement that plaintiff testified he thought the truck was moving when he saw it at the south door. As a matter of fact the record is as follows: "Where were the front wheels?" He answered "If I remember right, right in the door." "It was moving, was it not?" The answer was, "I thought so." "I had not signaled for him to come in. I did not observe if he was moving or not. It had made a complete circle and had its front wheels in the door. At the time it had its front wheels in the door, I was turning on or about to turn on the switch. This switch is inside the mill proper and is a common lever 'D' switch. It was about shoulder high off the floor."

They make a further point of the fact that the plaintiff in this case stated there was sufficient light so he did not turn on the light switch after the south door was open.

All the parties concede the rule to be that in considering a demurrer to the evidence we must draw all inferences from it favorable to the plaintiff and disregard all contradictory or conflicting evidence. It is conceded also that both parties owed the duty to exercise ordinary care.

One of the grounds of negligence we held in the former case should have been submitted to the jury was the failure of defendant to have his lights turned on when he drove into the driveway. Defendants point out here that at this trial the plaintiff testified "There was a light in the driveway which is turned on by a switch on the west wall but I didn't turn it on because with the south door open, I didn't need it." They argue that such testimony actually acquits them of the negligence of driving into the driveway without having their lights turned on. Were that the only negligence with which defendants were charged our question might be different.

The next act of negligence we discussed in the former opinion was that Kimble failed to keep a proper lookout. Defendants argue then there was no evidence at all to that effect. We reversed and held there was. This record is about the same as the former one in that respect. The narrowness of the driveway, the width of the truck, the statement of plaintiff as to where he was and the statement of Kimble that he didn't see him "I was watching the other side of the truck or driveway," is sufficient to require the submission of the issue of plaintiff's negligence to the jury.

On the matter of whether plaintiff's evidence proved him to have been guilty of contributory negligence as a matter of law, defendants first point to his testimony that when he last saw the truck its front wheels were at the south door, and that he did not turn on the light in the driveway. They point out further that he testified he did not look back at the truck any more and assumed that the driver would look out for his safety. Defendants make the statement in their brief that knowing the danger of his surroundings plaintiff neglected to make any observance of a known dangerous condition and walked into the side of defendant's truck. The record hardly bears out such a statement. The testimony of plaintiff was that after turning on the compressor switch, at which time he last saw the truck at the south door, he turned and took three steps toward the north door and he did not know the truck was near him until he felt it against his leg. His duty took him to the north door to open it so that the truck could be driven out when unloaded. Defendant Kimble had been there before with grain. It was the custom to signal an oncoming truck when the operator was ready for it to be driven in. Plaintiff had not given such a signal. He had a right to rely on the truck not being driven in until he gave the signal. Besides this, plaintiff's testimony makes it a jury question whether he was directly in the path of the truck when it was being driven in. We said in the former opinion:

"We think it too strict an interpretation of the plaintiff's evidence. We have demonstrated that it was a question for the jury whether Kimble failed to exercise due care when he drove into the driveway without turning on his lights and before he had been given the signal to do so. Such being the case, it is a jury question whether plaintiff had a right to rely on Kimble not coming in without his lights turned on and before he was given the signal to. Furthermore, we have demonstrated it was a question for the jury whether Kimble kept the proper lookout, hence it is a jury question whether plaintiff had a right to rely on Kimble keeping a proper lookout. Plaintiff was going about his duties in walking toward the north door to open it. In view of all the surrounding facts and circumstances, we cannot hold plaintiff was guilty of contributory negligence as a matter of law."

We find nothing in the record of the second trial to warrant a different conclusion than the above.

Defendant Minson next argues that his special demurrer should have been sustained because plaintiff's evidence showed he was not a partner of Kimble at the time. On this question plaintiff called defendant Kimble to testify. He testified that Minson was

not his partner on the date in question and that the relationship had ceased. Plaintiff relies on the insurance policy that was issued to Minson and Kimble doing business as the M & K Truck Line and certain reports to the corporation commission signed by Kimble for the M & K Truck Line. We have concluded that since Kimble was plaintiff's witness on the question of partnership the evidence contained in the papers must yield to the direct testimony. This is supported by the fact that it is uncontradicted that Kimble on this occasion was hauling his own corn. Minson's demurrer to the evidence should have been sustained.

Defendants next argue that the court erred in not giving an instruction on the defendant's duty upon leaving a place of safety. We have heretofore demonstrated that there is no evidence in this record to warrant such an instruction. The nearest to such was the testimony of plaintiff that had he remained with his arm through the door turning on the compressor switch only his feet would have been run over. He never was in a position of safety.

Defendants next argue the trial court erred in not sustaining their motion for judgment notwithstanding the verdict. This is but a repetition of the argument on the demurrer to the evidence. We have already dealt with it.

Defendants next argue that the trial court erred in overruling their motion for a new trial. One of the grounds of this motion was misconduct of the jury. On the hearing of the motion for a new trial testimony of various members of the jury was heard on the question of whether the verdict was a quotient verdict. One of the jurors testified as follows:

"Q. Without giving any of the other deliberations—in other words, without telling what was in your mind—I would like to ask you how this verdict was arrived at, the amount of this verdict? A. Mr. Brann was the foreman of the jury and he asked that—or suggested that if the—there was a judgment, which he thought there should be, if we would all put down an amount on a piece of paper, which we did, then someone in the group added it up and divided it by 12 and arrived at the $5,208.33, and then Mr. Brann said, 'Is there anyone that feels this is an unfair amount? Is this the amount that all of us wish, if you don't feel that way why speak up now,' and we all agreed that that would be the amount that we felt was right.

"Q. And there had been something said before the quotient was taken, before you divided by 12 to do that to arrive at a verdict? A. I think so. I think it was. I think it was agreed that, that before we wrote down those amounts that that would be the fair way, if one person said one amount and someone else said something higher and not knowing any better way, we agreed that an average would be right, and we discussed the average after we took it."

The foreman of the jury testified as follows:

"Q. You have heard the testimony of these two other jurors? A. Yes, sir.

"Q. Is that what occurred there at the time? A. That is correct.

"Q. Do you have anything to add to it at all? A. I don't know as there is anything I could add. I thought it was fair and square.

"Q. You suggested that you add their respective figures together and then divide the sum by 12 and that that would be adopted as the verdict; is that right? A. Well, yes.."

Plaintiff realizes the potency of this evidence and seeks to counteract it by claiming that on cross-examination these jurors testified that they were asked after the quotient had been reached whether they believed the amount to be fair and all the jury members said it was. The fact remains, however, that the evidence is uncontradicted, that the jury members all agreed that the quotient would be the verdict and it was. We have concluded that the verdict was arrived at in a manner condemned by what we held in *Neiswender v. Shawnee County Comm'rs.*, 153 Kan. 634, 113 P. 2d 115, and *Flaharty v. Reed,* 170 Kan. 215, 225 P. 2d 98. The result is the trial court erred in overruling the defendant's motion for a new trial.

In view of the fact that this is the second time this case has been here we will consider whether the defendants should have a new trial on all the issues or on the question of the amount of damages only. G. S. 1949, 60-3004, deals with the consideration of motions for a new trial on certain specified grounds. The last sentence is as follows:

"A new trial shall not be granted as to any issues in a case unless on the pleadings and all the evidence offered at the trial and on the motion for a new trial the court shall be of the opinion that the verdict or decision is wrong in whole or in some material part, and the new trial shall be only of the issues as to which the verdict or decision appears to be wrong, when such issues are separable."

There was nothing wrong with this trial except the manner in which the jury arrived at the amount of the verdict. The matter of the amount of the verdict is sufficiently distinct from the issue of the negligence of plaintiff and contributory negligence of defendant that there is no necessity for retrying them. In *Carlgren v. Saindon,* 129 Kan. 475, 283 Pac. 620, we said:

"When specific controverted issues have been once determined in a trial, either before the court, or the court and the jury, and some points at issue have not been determined, or have been improperly determined, where the points determined and those not determined are sufficiently distinct from each other that there is no necessity of retrying all issues in order to determine those

which had not been determined, there is no occasion for retrying the issues determined. A retrial, if necessary, should be of the issues only which have not been determined."

See, also, *Thompson v. Burtis,* 65 Kan. 674, 70 Pac. 603; *Leeman v. Page,* 79 Kan. 479, 100 Pac. 504; *McCullough v. Hayde,* 82 Kan. 734, 109 Pac. 176; *Railroad Co. v. Thisler,* 90 Kan. 5, 133 Pac. 539; *id.,* 96 Kan. 184, 150 Pac. 580; *Denton v. Railway Co.,* 90 Kan. 51, 133 Pac. 588; *Packard v. Packard,* 95 Kan. 644, 149 Pac. 404; *Ballou v. Railway Co.,* 95 Kan. 761, 152 Pac. 284; *Harris v. Drenning,* 101 Kan. 711, 168 Pac. 1106; *Scoby v. Bank,* 112 Kan. 135, 140, 211 Pac. 110; *Fontana v. Integrity Mutual Casualty Co.,* 120 Kan. 406, 243 Pac. 1035; also *Evans v. Mosely,* 84 Kan. 322, 332, 114 Pac. 374; *id.,* 87 Kan. 447, 124 Pac. 422; *Supply Co. v. Bank,* 103 Kan. 654, 176 Pac. 129; *Bracken v. Champlin,* 114 Kan. 882, 220 Pac. 1027; *Gill v. Smith,* 121 Kan. 18, 21, 245 Pac. 1041; *McGarr v. Schnoor Cigar Co.,* 125 Kan. 760, 768, 266 Pac. 73.

All these authorities are in point here.

The judgment of the trial court is reversed with directions to grant defendant Kimble and Home Mutual Insurance Company a new trial on the question of damages only and to enter judgment in favor of defendant Minson.

WEDELL, J. (dissenting in part): In the light of the entire record, including the particular issues raised on appeal, I prefer to leave the question whether there shall be a new trial generally or only on the issue of damages to be decided in the first instance by the trial court. Neither of the parties has ever been heard on that question. It was not presented to the trial court and is not mentioned by either of them in this court.

I have noted cases cited in the court's opinion which may be found in *Carlgren v. Saindon,* 129 Kan. 475, 283 Pac. 620. I do not disagree with the decision in the Carlgren case from which the prevailing opinion quotes. In that case, however, unlike the instant one, the parties were not deprived of their right to be heard on the question. It had been presented to the trial court and its ruling was properly here for review.

By reason of a trial court's familiarity with all aspects of the litigation and its advantage over this court in determining the fairness of an order granting or denying a motion for a retrial on the single issue of damages, we frequently have said the ruling rests in the exercise of the trial court's sound judicial discretion and its ruling

will not be disturbed absent abuse of such discretion. A few of our decisions are *Brokmann v. Lawson,* 117 Kan. 386, 388, 232 Pac. 601; *Friesen v. Western Grain Dealers Ins. Co.,* 119 Kan. 513, 516, 240 Pac. 414; *Paul v. Western Distributing Co.,* 142 Kan. 816, 52 P. 2d 379; *Posey v. Johnson,* 145 Kan. 742, 743, 67 P. 2d 598.

I do not want to deprive the parties of a right to be heard on the subject and prefer not to deny the trial court an opportunity to rule on the question.

I, therefore, would limit our review to the questions presented on appeal. Of course, if this court believes it might be proper to limit the issues on retrial to the single question of damages I know of no sound reason why it should not frankly state the trial court has power to determine that question, if, and when, it is properly presented to it. This would not deprive the parties of a right to be heard and would permit the district court to exercise its customary discretionary power in the premises in harmony with the provisions of G. S. 1949, 60-3004.