No. 21,444.

S. Dolman and C. L. Dolman, Partners, etc., *Appellants*, v. The Kaw Construction Company, *Appellee*.

### SYLLABUS BY THE COURT.

1. Compromise and Settlement—*Account Stated—Finding.* A finding that the parties, before the action was brought, had arrived at a full and complete settlement of their differences under the contract upon an "account stated," is held to be sustained by the evidence.

2. Same—*Effect of an Account Stated in Writing.* Where the account is stated in writing, the law implies an agreement to pay; the time when there must be an agreement, express or implied, for the payment of the balance, is when the settlement is agreed upon.

3. Same—*Stated Account—Binding on Both Parties.* The debtor cannot destroy the legal effect of a stated account by refusal to pay at a subsequent time; and on the other hand, neither can the creditor avoid its effect by refusing to accept the amount as the balance due; nor avoid the force and legal effect of the settlement on the ground of some new disagreement with the debtor.

4. Same—*Debtor's Agents Had Authority to Make Settlement.* On the facts stated in the opinion, *held*, that the chief engineer and the general manager of a railway construction company, which was the debtor, had authority to make a settlement, which it is held embraced all the essential elements of a stated account.

Appeal from Douglas district court; Charles A. Smart, judge. Opinion filed November 9, 1918. Affirmed.

*S. D. Bishop*, of Lawrence, and *John E. Dolman*, of St. Joseph, Mo., for the appellants.

*J. E. McFadden*, and *O. Q. Claflin, jr.*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was originally begun by plaintiffs against the Kansas City, Kaw Valley and Western Railway Company to recover for work and material in the construction of an interurban line extending from Kansas City to Lawrence. The Kaw Valley Construction Company, which was the general contractor and had sublet a portion of the work to the plaintiffs, was not originally a party to the action, but subsequently was made a party, and the court sustained a motion to dismiss the action as to the railway company.

The case was tried by the court, and findings of fact were made, among which is a finding that the parties had agreed upon an account stated showing a certain balance due from the defendant to the plaintiffs, for which the court gave judgment in plaintiffs' favor. From the judgment plaintiffs appeal.

The findings of fact, some of which we summarize and others quote, are as follows:

The contract between the plaintiffs and the construction company was entered into on the 19th day of March, 1915, and was for the construction of the roadbed for the railroad from Bonner Springs to Lawrence. As the work progressed monthly estimates were given to the plaintiffs by the chief engineer of the construction company, who was also the chief engineer of the railway company; the work was completed about December 1, 1915. From about October 1, 1915, until February 1, 1916, plaintiffs had employed a firm of engineers to check up the work and ascertain the true condition of the account against the defendant. While the work was in progress they had an engineer in their employ as a clerk, who gave his entire time to the work connected with the contract. The plaintiffs are old contractors, thoroughly familiar with the work they were required to do in carrying out their contract.

"From some time in the latter part of December, 1915, up until the 2d day of February, 1916, the plaintiffs and the defendant construction company were engaged from time to time in an endeavor to arrive at a settlement of this entire matter, and on February 2, 1916, had a full, complete and final settlement, and it was at that time ascertained that there was due to the plaintiffs from the defendant construction company, $6,246.32. In arriving at this settlement the construction company had the assistance of its chief engineer, and the plaintiffs had the assistance of their clerk

Dolman & Son v. Construction Co.

heretofore mentioned, as also the figures of the special engineer employed by them as above stated. After arriving at the settlement, the plaintiffs demanded the amount due as ascertained in that settlement, but were advised by the general manager of the Kaw Construction Company that certain unpaid bills had been presented to it for payment, and the general manager insisted that the plaintiffs should pay these bills or permit the construction company to deduct them from the amount so found due. To this the plaintiffs objected for the reason that said bills were not properly chargeable against them, and not properly chargeable against either the construction company or the railway company, and this was the only matter of disagreement between the parties. The evidence does not disclose that these unpaid bills were properly chargeable against the plaintiffs or against either the construction company or the railway company. Neither does it disclose that the general manager was acting in bad faith when he insisted upon their payment, and no claim is made at the trial of this cause that such bills were properly chargeable against the plaintiffs, the construction company or the railway company. When this final settlement was arrived at it was reduced to writing, but was never signed by the parties."

As conclusions of law the court found—

"The parties having arrived at a full and complete settlement of their differences under the contract in suit, the amount thus found due from the construction company to the plaintiffs is the measure of the plaintiffs' recovery.

"There should be a judgment in this case in favor of the plaintiffs against the defendant construction company for $6,246.32, with interest thereon at six per cent from February 2, 1916, and for such costs of this action as accrued from and after the date the defendant construction company was made a party to this action."

There are several complaints with respect to rulings of the trial court, but the only question necessary for us to determine is whether the parties agreed upon the amount due under the contract, and this involves a consideration of what constitutes a stated account.

There is but little conflict in the testimony of the parties with respect to what occurred at the time of the settlement. It appears that on January 27, 1916, C. L. Dolman, who had charge of the matter for the plaintiffs, and his engineer Swope, met with the chief engineer of the construction company in Dolman's room in the hotel in Bonner Springs for the purpose, as Dolman testified, "of making a complete and final settlement." He went over the notes of his engineer and "figured different places where I thought it was an error, and checked it." At this conference it was found that the figures of the

engineer for the plaintiffs and the figures of the chief engineer
of the construction company should be compared again, and
Mr. Dolman authorized his engineer to go over the figures. A
typewritten statement of the result was made up and given to
Dolman, which showed the result reached by the chief engineer.
Afterwards, on February 2, Dolman met with the chief engi-
neer and Mr. Taylor, manager of the defendant company, and
there was an agreement that the balance due the plaintiffs was
$6,246.32. The amount was agreed upon and reduced to writ-
ing, but the writing was not signed by either of the parties. It
seems that this was late at night, and the parties agreed to
meet the next day, when payment was to be made. They did
meet on the following day, and Taylor called the attention of
Dolman to the fact that some unpaid bills had been presented
by subcontractors, and asked him to arrange for their payment.
The defendant's testimony tended to show that Dolman became
angry at this, and left the room, saying that if they did not pay
the amount agreed upon, he would bring suit. Dolman him-
self testified that at the meeting next morning he made a de-
mand for the $6,246.32, the amount due on what he calls "the
estimate" of the day before, and was informed that they
"could n't pay it until some of these bills were settled," and
that he threatened to sue them if the amount was not paid, and
then left the meeting.

Mr. Taylor, the manager of the construction company, testi-
fied that at the meeting at the bank next morning he told Dol-
man they were ready to pay him, but wanted him to take care
of some bills for claims of various kinds, and that Dolman said
he expected to be paid the full amount that was due him, and
that he would n't stand for their having any further charge of
his affairs; wanted the full amount without regard to the bills.
"I told him that he could give these men orders on us to pay
the money due them, or we would forward the money to them
and pay him the balance. He said we would pay him the full
amount or he would sue us. He referred to the balance due on
the estimate, the only amount I ever heard mentioned."

The facts show all the essential elements of a stated account
—a meeting of the minds of the parties upon the correct-
ness of the account, and when this is shown, the law implies an
agreement to pay.

"An account stated in an agreement, express or implied, between par-·
ties . . . fixing and determining the amount due from one to the other
on account, and when such agreement is made, such account stated be-
comes a new obligation.' (*Harrison v. Henderson,* 67 Kan. 202, syl. ¶ 1, 72
Pac. 878.)

The definition given in 1 C. J. 678, is:

"An account stated is an agreement between parties who have had
previous transactions of a monetary character that all the items of the
account representing such transactions, and the balance struck, are
correct, together with a promise, express or implied, for the payment of
such balance."

"The meeting of the minds of the parties upon the correctness of an
account stated is usually the result of a statement of account by one
party and an acquiescence therein by the other. The form of the acquies-
cence or assent is, however, immaterial, and may be implied from the
conduct of the parties and the circumstances of the case." (1. C. J. 687.)

"The statement of the account need not be in writing, nor need the
agreement, if oral, be based upon writings evidencing transactions be-
tween the parties; and it is no objection that a part thereof is in writing
and a part oral. So if the account is stated in writing, it is not necessary
that it be signed or acknowledged in writing." (1 C. J. 682.)

The main contention of the plaintiffs is that there was a
failure to show an account stated, because the defendant,
through Mr. Taylor, its general manager, "not only refused to
agree that the sum so certified was the balance due, or to
promise to pay the same, but expressly refused to pay it, claim-
ing that about $4,000 of claims against appellants' subcon-
tractors should be deducted therefrom." It is insisted that
every essential element of the definition of a stated account was
lacking. We do not concur in this contention. The findings do
not show that the general manager refused to agree that the
sum certified was the balance due, or to promise to pay the
same *when the settlement was agreed upon.* The findings and
the evidence are to the contrary; nor is there a finding that the
representatives of the defendant "expressly refused to pay it"
when the matter of the subcontractors' claims was discussed.
The evidence of both sides is that when Dolman demanded the
$6,246.32, he was told they were ready to pay him, but wanted
him to take care of certain bills.

The time when there must be an express or implied agree-
ment to pay, is when the parties agree on the amount due from
the debtor to the creditor. The contention that the refusal to

pay on the day following destroyed the legal effect of the agreement entered into when the account was stated is not sound. An action may be brought on an account stated where the debtor refuses to comply with his agreement to pay. The settlement set at rest all controversy as to the amount the plaintiffs were entitled to receive from defendant. The debtor cannot destroy the legal effect of the settlement by his refusal to pay at a subsequent time; and on the other hand, neither can the creditor avoid the effect of his agreement by refusing to accept the amount as the balance due; nor can he avoid the force and legal effect of the settlement on the ground of some new disagreement with the debtor. Were it otherwise, either party could subsequently destroy the binding force of the contract of settlement by provoking a disagreement, and thus take advantage of his own wrong, and settlements of disputed accounts would amount to nothing until payment was actually made and accepted.

Another contention is that the chief engineer of the railway company was without authority to enter into a binding contract between the original contractor and the subcontractors. First, it is said that a stated account creates a new obligation, and *Harrison v. Henderson*, 67 Kan. 202, 72 Pac. 878, is cited, in which it was said that the stated account "becomes a new obligation and takes the place of the one on the prior account." (syl. ¶ 1.) Next, it is said that the duties and powers of a chief engineer of a railway company, as between contractors and subcontractors, are such that he had no authority to make a contract for either, and the case of *Ritchie v. City of Topeka,* 91 Kan. 615, 622, 138 Pac. 618, is cited, in which it was said:

"The fact that the engineer was vested with supervising power and authority to interpret. specifications and determine disputed questions that might arise between the city and the contractor gave him no authority to make a new contract."

The completed sentence reads, "nor to approve claims for work and material not furnished."

In that case the engineer, by fraud and collusion with the contractor, had approved claims of the latter, which the city paid, for removing solid rock, where, in fact, he had removed only loose rock. In the present case, Taylor, the general manager of the construction company, made the settlement,

and the court finds that he was assisted by the chief engineer of the construction company. Moreover, the parties were not making a new and independent contract for the construction of the railway, but merely a settlement between the construction company and the plaintiffs as to the sum due to plaintiffs upon the original contract. The stated account became a new obligation, taking the place of the former obligation for payment, but not the place of the contract for constructing the railway.

The finding that there was a full and complete settlement and an account stated between the parties is supported by abundant evidence and cannot be disturbed.

In view of the settlement between the parties, the other rulings of the court of which complaint is made become of no importance.

The judgment is affirmed.