## Appellate Department, Superior Court, Los Angeles

[Civ. A. No. 8706. Aug. 2, 1955.]

JOSEPH LEVY et al., Respondents, v. ISADORE H. PRINZMETAL et al., Appellants.

Irwin N. Howitt for Appellants.

I. H. Prinzmetal, in pro. per., for Respondents.

PATROSSO, J.—Plaintiff instituted this action by filing a complaint containing three causes of action, each in the form of a common count: (1) book account; (2) account stated; and (3) *quantum meruit*, each, however, seeking recovery for the sum of $200 for meat supplied by plaintiff's assignor to defendants under the circumstances now to be stated.

Defendants purchased an Amana Freezer from Metropolitan Food Plan (not a party to this action), for which a Mr. Beaumont was a salesman. Beaumont then directed defendant wife to Majestic Meat Packing Company (plaintiff's assignor, hereinafter referred to as plaintiff), where she purchased and defendants paid for a quantity of meat which was stored in the freezer. There is no suggestion that anything was wrong with the meat when sold. About a month later the freezer went out of order and the meat therein was spoiled. Defendant wife thereupon telephoned Mr. Beaumont, who thereupon requested Mr. Gaskin, a partner in Majestic Meat Packing Company, to go to defendants' house with him. While there is some conflict as to just what conversation took place between Mr. Gaskin, Mr. Beaumont (who was not called as a witness) and the defendants, Mr. Gaskin's testimony is to the effect that he and Mr. Beaumont told defendant wife "that she had her insurance policy, it would be a matter with the freezer company on the spoilage of food, if the proper forms were filled out and repairs were made. And we explained to her . . . the box was an eighteen cubic foot box, and it would only carry a $200 insurance policy on the box, which we replace, and help her fill out the forms; after she had made all the necessary report (*sic*) on it, not to worry about it." Plaintiff thereupon removed the spoiled meat and replaced the same with two hundred dollars worth of other meat selected by defendants. At or about the same time, defendants ordered additional meat of the value of $14.30. Subsequently plaintiffs rendered a statement to defendants, reading as follows:

| "Replacement of spoiled meat | 200.00 |
| Smoked tongue | 14.30 |
| | 214.30 |
| Credit on meat | 200.00 |
| | 14.30" |

Following the receipt of this invoice, defendant Mr. Prinzmetal forwarded a check to plaintiff in the sum of $14.30, which was cashed by the payee. This check contained the fol-

lowing notation: "Endorsement of this check acknowledges receipt in full for the following items: Your Inv. #18810—$214.30. Less credit $200.00—$14.30."

Defendants contend that as a result an account was stated between the parties in the sum of $14.30, and that defendants having paid and plaintiff having accepted the same, the alleged debt sued upon was discharged. We agree, and accordingly are reversing the judgment.

■ An "account stated" is a new contract having a previous indebtedness for its consideration. (1 Cal.Jur.2d p. 368, § 44.) ■ It arises where "transactions have occurred between the parties from which the relation of debtor and creditor has arisen, that thereafter one or both have rendered or made statements or declarations specifying definitely the amount due on account thereof and thereupon there has been an agreement, express or implied, by the one who is the debtor, to the other, that a certain sum is due from him on such account, together with an express or implied promise to pay the same." (*Bennett* v. *Potter* (1919), 180 Cal. 736, 745 [183 P. 156].) ■ Thus if a creditor renders to a debtor a bill or invoice reflecting a charge in a stated amount arising out of transactions previously had between them, and the debtor makes no protest as to the amount shown due, his silence is equivalent to express assent to the correctness thereof, and gives rise to an account stated, implying a promise upon the part of the debtor to pay the same and a correlative promise by the creditor to accept that amount shown in discharge of the obligation. ■ Similarly the acceptance of payment of a balance shown to be due on an account rendered *by a debtor* to his creditor ordinarily constitutes an account stated *as against the party accepting the payment*. (1 Cal.Jur.2d p. 379; *Hansen* v. *Fresno Jersey Farm Dairy Co.* (1934), 220 Cal. 402, 408 [31 P.2d 359]; *Wallace* v. *Crawford* (1937), 21 Cal.App.2d 394, 404 [69 P.2d 455].) ■ It has also been said that a debtor cannot destroy the legal effect of an account stated "by subsequently refusing to pay, nor can the creditor avoid its effect by refusing to accept the amount as the balance due." (1 C.J.S. p. 725; *Dolman* v. *Kaw Const. Co.* (1918), 103 Kan. 635 [176 P. 145, 2 A.L.R. 67, 70-71].)

It would indeed be a strange rule which declared that where a creditor sends a bill to his debtor an account stated arises if the latter makes no objection thereto, as a result of which he becomes obligated to pay the balance as thus shown, but that an account stated does not result where upon receipt

of a bill from his creditor the debtor pays the amount shown as due thereon and the payment is accepted without objection by the creditor.

Here the undisputed evidence not only shows the rendition of a bill by plaintiff to defendants showing a balance of $14.30, but payment thereof by defendants by a check bearing the notation previously mentioned to the effect that endorsement of the same constituted a receipt in full. Indeed, it would appear that the check itself constitutes an account stated as against plaintiff who cashed the same under the rule announced in *Hansen* v. *Fresno Jersey Farm Dairy Co.* and *Wallace* v. *Crawford, supra.* A party accepting payment on an account stated by the debtor may not thereafter claim that the account was not paid in full. (1 C.J.S. p. 732, par. "h.")

While it is true that an account stated may be impeached for fraud or mistake, there is no evidence of either here. According to the plaintiff's evidence, the defendants were assured by plaintiff's assignor that the replacement of the spoiled meat to the amount of $200 was the responsibility of the freezer company if the proper forms were filled out, and the defendants were told not to "worry." It likewise is undisputed that the forms submitted to defendants by plaintiff's assignor were filled out by defendants, and by the assignor forwarded to the Amana Freezer Company. Why the claim was not paid by the freezer company does not appear. Upon the present record before us, it appears that plaintiff's assignor, when replacing the spoiled meat, looked for payment therefor, not to the defendants, but a third party (the freezer company), in the apparent belief that the latter was liable therefor. The mere fact, however, that the company refused to pay without a showing that such refusal was justified does not serve to establish that plaintiff's assignor was mistaken in such belief. If upon a retrial it should be made to appear that the refusal of the freezer company to make payment was justified by reason of the fact that it was not liable for any reason other than the fault of plaintiff's assignor, a different situation will be presented.

The judgment is reversed.

Shaw, P. J., concurred.

SWAIN, J.—I dissent. As noted in the majority opinion, there is a conflict in the evidence as to what conversation

took place at defendants' house, but there is testimony to support the implied finding that the defendants ordered $200 of meat to replace that which was spoiled. The defendants claimed that it was to be replaced at the expense of Amana or its insurance carrier. The implied finding of the court is against this contention. There is no evidence that there was any connection between the freezer company and the meat company except as above stated. In fact, Gaskin of the meat company testified that he was not connected with the Metropolitan Food Plan at all.

We, therefore, have a freezer sold by one company and meat sold by another company. Up to this point there is no difficulty for us in the case. The complicating factors began to work when plaintiff's assignor sent the first invoice (Exhs. A and B) for the meat. This contained two items, "replacement of spoiled meat $200" and "smoked tongue $14.30." The invoice which was sent to the defendants (Exh. B) stated "credit on meat $200," leaving a balance of $14.30. The assignor's copy of the invoice (Exh. A) was the same, except that it stated, "credit on spoiled meat as per Irving Kornblum meat returned $200." This notation was in the handwriting of assignor's accountant. Irving Kornblum was a partner in plaintiff's assignor. The $14.30 for smoked tongue was paid by the defendants after receiving the original invoice. It was a separate order, having nothing to do with the replacement for the spoiled meat.

The question is: Did payment of the $14.30 constitute an accord and satisfaction for the entire bill? My answer is "No." 1 Corpus Juris Secundum 502: "The payment by a debtor, and acceptance by the creditor, of a sum which is conceded by the debtor to be due and payable, or as to which there is no dispute or controversy, furnishes no consideration for the discharge of a disputed claim for an additional and distinct amount or item of liability, for the payment, being nothing more than the debtor admittedly owed, is neither a detriment to him nor a benefit to the creditor, and so does not constitute or effect an accord and satisfaction thereof, or of the entire account between the parties, in the absence of any new or additional consideration, even though such payment is tendered and accepted or receipted for as in full payment or settlement. The payment operates as a discharge of the items or amount paid only, and the creditor is entitled to maintain an action to recover the balance of his claim." 1 Corpus Juris Secundum 515: "Where there are two claims dependent

on different facts, and one claim is undisputed and the other disputed, acceptance of payment of the undisputed claim does not bar the right to sue for and recover on the disputed claim.'' To the same effect is *Sharp* v. *Conti* (1943), 57 Cal.App.2d 1007 [136 P.2d 99]. See also 1 Cal.Jur.2d 255.

Appellants contend that the plaintiff sued on an account stated and is, therefore, limited to a claim of $14.30 which was paid. Plaintiff did sue on an account stated but for $200, not $14.30. It does not appear whether the court decided that there was an account stated for $200. The evidence would not support a decision that there was an account stated for $200 as pleaded. We assume the case was decided on one or more of the other counts, both of which are supported by the evidence.

There was no consideration for the $200 credit. Plaintiff's assignor was not to blame because the meat was spoiled. He was not in any way liable for replacing it. The court's implied finding is that he did not agree to replace the meat at his expense. There is no reason why the defendants should not pay for meat which they bought.

I would affirm the judgment, with costs to respondents.