Harris v. Drenning.

---

No. 20,999.

ZELLAH M. HARRIS, *Appellee*, v. FRANK G. DRENNING, *Appellant*.

### SYLLABUS BY THE COURT.

1. ACTION—*Money Collected and Retained by Plaintiff's Attorney—Evidence—Attorney's Fee—Findings.* Where a client brings an action against her attorney for an alleged balance of funds in his hands collected by him on her account, and where the petition charges that defendant attorney was guilty of fraud and misrepresentation as to the amount collected, and where the court properly instructs the jury that if the defendant was guilty of such fraud and misrepresentation he was not entitled to any deduction for attorney's fees, a verdict for plaintiff for a sum which manifestly made an allowance to defendant for attorney's fees, amounts to a finding of the jury that the attorney was not guilty of fraud or misrepresentation.

2. COMPROMISE AND SETTLEMENT—*Attorney and Client.* Where an attorney and client meet for the purpose of an accounting and settlement and the attorney specifies the fee and the client makes no objection at the time nor for eighteen months thereafter, there is in effect an account stated and a settlement made between the parties concerning such attorney's fee.

3. APPEAL—*Controverted Facts—Not Open to Review.* On appeal, however persuasive and convincing the evidence may be, where there still remain certain controverted facts in issue, the supreme court can not perform the functions of a jury and can not order final judgment.

4. SAME—*New Trial—Certain Issues Eliminated.* The rule of the civil code, section 307, which directs that where justice requires that a new

trial be granted, but that "the new trial shall be only of the issues as to which the verdict or decision appears to be wrong, when such issues are separable," applied.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed November 10, 1917. Reversed.

*James A. Troutman,* and *J. J. Schenck,* both of Topeka, for the appellant; *Frank G. Drenning,* of Topeka, *pro se.*

*D. H. Branaman,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff sued the defendant, a Topeka lawyer, for a balance alleged to be due on a sum collected by defendant on a fire insurance policy held by the plaintiff. Judgment was also prayed for on several small items of money involved in the details of this transaction.

The plaintiff's house was burned. There was a fire insurance policy thereon for $1,200. The title to the house was vested in a loan company, and plaintiff had a contract for its purchase on small monthly payments. Many items of payments due under the contract of purchase were in default. The loan company held the insurance policy to protect its interests, and it was about to foreclose or forfeit plaintiff's interest in the property. The insurance company was not disposed to pay the insurance because of some evidence of incendiarism. Plaintiff employed a lawyer to collect it. He did some work toward that end, and was offered a compromise by the insurance company. Plaintiff discharged this lawyer and employed the defendant. He made arrangements for raising money to pay the loan company in full so as to clear her title to the property and to perfect her right to the insurance, plaintiff furnishing $175 of the money herself, and a friend of hers furnishing $800 for that purpose. When the debt and claim of the loan company were cleared off, he set about the collection of the insurance. He prepared a petition to start suit, but eventually succeeded, after some effort, in inducing the insurance company to pay the full sum, $1,200, without formal litigation. The insurance company's check or warrant for this sum was drawn in favor of both plaintiff and

Harris v. Drenning.

defendant, endorsed by them, and collected by defendant. Defendant then called into his office the plaintiff and the friend who had advanced part of the money, $800, to pay the loan company. The three met there, and defendant paid this friend $800, and dismissed him. Then he and plaintiff had a settlement, and she departed for California for a sojourn of six months. The disputed facts involved in that settlement form the basis of this lawsuit, which she commenced about a year after her return from California—some eighteen months after the settlement.

Plaintiff's petition in substance alleged that defendant fraudulently represented to her that he had only collected $1,100 from the insurance company, and that he had withheld and defrauded her out of $100; that aside from the $800 paid to liquidate her friend's loan, the defendant had never paid her anything; that she had advanced $175 to defendant to settle with the loan company, and that of that amount defendant only paid to the loan company the sum of $172.49, wrongfully retaining $2.51 to his own use; that of the $800 advanced by her friend to pay the loan company only $785.74 was so paid, and defendant wrongfully retained to his own use the sum of $14.26 of that item; that she gave plaintiff another item of $15 to be used as a deposit in lieu of costs if it were necessary to bring suit against the insurance company, and that defendant wrongfully withheld this item of $15. Thus the aggregate of the items for which plaintiff prayed judgment were—

Balance of sum collected on insurance policy.................. $400.00
Balance on item of $175 advanced by plaintiff.................. 2.51
Balance on item of $800 advanced by friend.................... 14.26
Cash advanced for use in lieu of cost bond.................... 15.00

    Total ............................................... $431.77

The petition also alleged:

"Plaintiff further alleges that said defendant took, kept and appropriated all of the aforesaid sums on the pretense and claim that he was keeping the same as an attorney's fee for the services which he had rendered; that instead of charging her a reasonable fee, as per their agreement, he took, kept and appropriated the said sum of $431.75, which was grossly excessive, exorbitant, unjust and unreasonable and in violation of their agreement and of his trust relations with her.

"That a reasonable fee for the services rendered by defendant would have been not to exceed $50. That she demanded that he refund to her

the balance due her after deducting a reasonable fee, but he refused, and has ever since refused to do so, and by such refusal and breach of his fiduciary relations with her, has forfeited his right to any compensation whatever."

The defendant's answer included a general denial; a statement as to the status of the transactions and affairs between plaintiff and the loan company; an allegation that the fire which destroyed the house was of incendiary origin, and—

"Defendant further alleges that on or about the 1st day of December, 1912, he was employed by plaintiff as her attorney to collect all monies due under said policy of insurance, but defendant met with great difficulties in settling insurance loss and, on or about December 21st, 1912, defendant collected for plaintiff the full face of said policy of insurance on said house in the sum of $1,200.00, that the collection thereof required great labor and industry for a period of two weeks; that the services so performed by defendant for plaintiff were reasonably worth the sum of $300.00; that on said 21st day of December, 1912, defendant made a full and complete settlement of all matters connected with the collection of said policy of insurance, and paid over to her all money belonging to her, and charged her an attorney fee of $240.00, which he retained out of said sum of $1,200.00 collected on said policy of insurance."

Defendant's financial account (abridged) of the matters in controversy is as follows:

| | |
|---|---:|
| Received from plaintiff to pay loan company | $175.00 |
| Received from plaintiff's friend to pay loan company | 800.00 |
| Collected from insurance company | 1,200.00 |
| Total | $2,175.00 |

Disbursements, etc.:

| | |
|---|---:|
| Payment to loan company (December 16, 1912) | $172.49 |
| Payment to loan company (December 18, 1912) | 785.74 |
| Payment, recording plaintiff's deed | 1.77 |
| Reimbursement to plaintiff's friend | 800.00 |
| Attorney's fee as per settlement | 240.00 |
| Paid to defendant on date of settlement | 175.00 |
| Total | $2,175.00 |

The record is long. Plaintiff's evidence, in part, tended to support the allegations of her petition, except as to the facts about the attorney's fee. Defendant's testimony as to the attorney's fee was substantially the same as testified to by plaintiff. In other respects defendant's testimony squarely contradicted that of the plaintiff. Defendant took many depositions, in California, Iowa, and elsewhere, to gather what additional evidence was possible to support his own testimony and to discredit the testimony of plaintiff.

The court instructed the jury, in part, as follows:

"5. The plaintiff charges in her petition that the defendant falsely and fraudulently represented to her that he had settled with the insurance company for $1100 instead of $1200, the sum actually received by him. One of the questions for you to determine is whether the defendant was guilty of fraud as charged. . . .

"7. If you find from the evidence that the defendant made a statement to the plaintiff of the amount of money collected by him without misrepresentation of the facts, and that a balance was struck and agreed upon by the said parties, and all moneys due plaintiff were paid over to her by defendant, except the attorney's fee of $240, and you further find that defendant charged $240 for his services and plaintiff did not object to said charge or demand a return of a portion of said sum of $240, retained as attorney's fees, within a reasonable time, then I say to you that such adjustment or settlement of the matter was binding and conclusive on the plaintiff and she can not recover in this action.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"11. The relation existing between the defendant and the plaintiff in this case with reference to the matters in controversy between them was that of attorney and client. It was the duty of the defendant in his capacity as attorney to faithfully and correctly make known to the plaintiff all the material matters relating to the business he was conducting in her behalf, including the amount collected on the insurance policy, and if you find from the evidence that he violated this duty and falsely and fraudulently represented the amount collected upon the policy to be $1100 instead of $1200, the amount which he actually collected, and that he undertook thereby to derive an advantage to himself through such misrepresentation and plaintiff believed and relied upon such misrepresentation, then I instruct you that he was guilty of fraud and that he thereby forfeited his right to any compensation for his services to plaintiff, and she would be entitled to recover in this action any amount paid him for services. . . .

"20. . . . (b) If you find for plaintiff and that the defendant was guilty of fraud in misrepresenting the amount collected by him, as charged by plaintiff, and that defendant did not pay any sum to plaintiff on the day he received the $1,200, as claimed by the plaintiff, then it will be your duty to return a verdict for the full amount of money in the defendant's hands belonging to plaintiff, with interest thereon, from January 1st, 1913, at six per cent, not allowing defendant any credit in the way of attorney's fees."

On these issues, on the evidence, and under these and other pertinent instructions, the jury returned a verdict in favor of plaintiff for $360 and interest.

Defendant filed a motion for judgment notwithstanding the verdict, and the overruling of this motion and of his motion for a new trial brings the case here for review. An assign-

ment of miscellaneous errors is presented; only a few of these will require discussion.

Under the issues of this case and the instructions of the court, the jury certainly rendered a curious verdict. The court told the jury that if defendant were guilty of fraud towards his client or ·if he misrepresented to her the sum collected from the insurance company, he was not entitled to any deduction for attorney's fees. Manifestly the jury believed the defendant's evidence that he had told her the truth about the amount of the collection, and disbelieved the plaintiff's evidence on that subject. That fact inheres in the verdict, for in no other way could a verdict for $360 be arrived at. The verdict, therefore, acquits the defendant on the charge of fraud.

Again, not only from the defendant's testimony, but from the plaintiff's own testimony, the evidence shows clearly and without dispute that the attorney's fee was settled and agreed to between the parties. The plaintiff on direct examination testified:

"I said, 'We had better settle had n't we?' and Mr. Drenning said, 'Yes'.; and turned to his desk, commenced to scratch on some paper, to figure, and he said, 'I guess I will have to charge about fifteen per cent'; and then he said he would have to charge me twenty."

On cross-examination, plaintiff testified:

"Q. Then you say Mr. Drenning told you he thought his charges ought to be about fifteen per cent and then he studied [in] a minute and said he thought they ought to be about twenty per cent? A. Yes, sir.

"Q. Did you make any objection to the twenty per cent? A. No; I did not.

"Q. He never took any receipt from you for his fees in that case? A. No; and I was willing to pay him whatever he thought was a just fee, but I was n't willing to pay him every cent.

"Q. If he had said he collected $1200 and his services were fairly worth twenty per cent, that would have been satisfactory to you? A. I would have thought it was a pretty big fee.

"Q. But you would have settled on that basis? A. I would if I could n't have done any better."

The testimony just quoted substantially accords with that of the defendant. He testified:

"I told her, which was the fact, that I had spent most of the time for ten or twelve days investigating branches of this case and investigating

Harris v. Drenning.

the law, and considering the work I had done that the case, a case of that kind, I thought an ordinary fee was fifteen or twenty per cent, and I said twenty per cent would really be a reasonable fee under all the circumstances of the case. She made no objection in any way and said nothing as far as I can remember."

Thus the evidence of both plaintiff and defendant disclosed that there was in effect an account stated and a settlement made between the parties touching the amount of the attorney's fee. It was fixed at twenty per cent of $1,200, or $240. So the question of the amount of the attorney's fee was not open to controversy, and on this point the jury utterly disregarded the evidence and the pertinent instructions of the court.

How does this leave the situation? Plaintiff demanded $431.77. The jury's verdict in effect says defendant committed no fraud. He did not deceive her as to the amount collected. He was therefore entitled to the attorney's fee agreed to between the parties. So from plaintiff's total demands there must be a deduction of $240 for the agreed attorney's fee. That would leave a balance for some amount which may be due the plaintiff if a jury is disposed to believe her testimony rather than the testimony of the defendant and the depositions which tended to discredit plaintiff's testimony. There was some "hard swearing" on the part of plaintiff. A single illustration will suffice: Plaintiff's testimony was that defendant had given her no money at all, but had sent her away penniless. The status of her finances was thus drawn in question. To explain how she happened to have some money and to avoid the natural inference that it was the money ($175) that defendant asserted he had paid her when he settled with her, she testified:

"Q. Now, did you have any money outside of this hundred dollars you had borrowed from Mr. Suddarth when you got to California? A. When I first got there? No, sir.

"Q. Did anybody send you any money or give you any money to California? A. When I first got there? No, sir.

"Q. From early in January until July? A. Yes, sir.

"Q. Who was it? A. Mr. Rye sent me $50.

"Q. That is this Mr. Rye of Kansas City? A. Yes, sir.

"Q. How many times did he send you money? A. I think it was three post-office orders."

Defendant took the deposition of the postmaster at Riverside, Cal., through which office plaintiff testified that she had

collected the money orders from Mr. Rye. Upon examination of his postal records and files the postmaster testified that plaintiff had received no money orders, nor did she have any such orders reissued to her through his office during the entire time covered by her testimony. Moreover, Mr. Rye, who as she testified had sent her money three times, totaling fifty dollars, gave his deposition. He testified that he owed her no money, and that he had formerly loaned her money, but that their business matters were all settled before plaintiff went to California.

"Q. You may state whether or not you sent any money to Mrs. Zellah M. Harris, or Mrs. S. M. Barrett or Belle Harris, the daughter of Mrs. Zellah M. Harris, or to any one for them, to Riverside or Los Angeles, Cal., from any place during the year 1913? A. I don't think so.

. . . . . . . . . . . . . .

"Q. You may state whether or not all the amounts that you sent were sent to Mrs. Harris at Topeka, Kan. A. Yes.

. . . . . . . . . . . . . .

"Q. State whether or not she paid them back [borrowed sums] before she left for California., A. Yes, she did."

Many other features of the evidence have been examined, but need not be further reviewed. It need hardly be repeated that a court of review is bound by the jury's findings of fact, which inhere in a jury's verdict, whenever there is some tangible evidence to support the verdict and when that verdict has the approval of the trial judge. Here the jury have acquitted the defendant of fraud, and the attorney's fee was settled and determined by the parties themselves. Those matters are settled. But as to the balance of the items in dispute, the court can not usurp the functions of the triers of the facts. Regardless of the very persuasive showing of defendant that he had paid the balance due the plaintiff, and the corroborative evidence tending to support his evidence and tending to show that plaintiff did not tell the truth when she swore that she got no money from defendant, and that she did not tell the truth when she testified that the money she spent in California was sent to her by Mr. Rye, all of which tended to discredit the testimony of plaintiff, yet it is not for an appellate court itself to say whether defendant did pay her the balance due after deducting his fee of $240 and some small items of expense.

The jury disregarded the evidence and disregarded the instructions, but this court does not see its way clear to adopt the view of appellant's counsel and to order final judgment. It can not be done.

In *Shylock v. Antonio*, "Merchant of Venice," scene 1, act 4, it was urged upon the court—

[*Bassanio*]: "I beseech you, wrest once the law to your authority: to do a great right, do a little wrong."

But wiser counsel prevailed:

[*Portia*]: "It must not be, . . . 'Twill be recorded for a precedent; and many an error, by the same example, will rush into the state. It can not be."

The court deems it unnecessary to discuss the proposition that the money collected from the insurance company was the proceeds of a conspiracy on the part of plaintiff and others to defraud the insurance company. It was not squarely pleaded and only incidentally involved.

It is clear that this judgment can not stand. Justice requires that a new trial be granted. But it is unnecessary to go over the whole controversy again. The case has been tried three times already. The amount of defendant's fee was settled by the parties and should not be litigated. The issue of fraud and misrepresentation having been determined in defendant's favor by the verdict should likewise stand as an established fact in the case. (Civ. Code, § 307; *Leeman v. Page,* 79 Kan. 479, 100 Pac. 904; *McCullough v. Hayde,* 82 Kan. 734, 738, 109 Pac. 176; *Denton v. Railway Co.,* 90 Kan. 51, 56, 133 Pac. 558; *Packard v. Packard,* 95 Kan. 644, 652, 149 Pac. 404; *Ballou v. Railway Co.,* 95 Kan. 761, syl. ¶ 2, 152 Pac. 284.)

The judgment is reversed and remanded with instructions to grant a new trial limited to a determination of what, if anything, is due from defendant to plaintiff.

MASON, PORTER, and MARSHALL, JJ., concur in the reversal of the judgment, but think that in the new trial ordered the issues should not be limited.