(627 P.2d 339)

No. 51,514

JERRY L. PHILLIPS, INC., *Plaintiff-Appellee,* v. GARY M. RATLEY, d/b/a MARSHALL PETROLEUM COMPANY, *Defendant-Appellant.*

Opinion filed May 1, 1981.

*Jean Oliver Moore,* of Wichita, for appellant.

*John N. Sherman,* of Sherman & Rubow, Chartered, of Chanute, for appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BULLOCK, J.: Gary M. Ratley owned an oil and gas lease north of Iola, Kansas, known as the "Latta" lease. In connection with the development of this lease, Ratley employed Jerry L. Phillips, Inc., to drill and equip two new wells, to obtain "core samples" in connection with the drilling of these wells, and to "wash down" two additional wells. Regrettably, the two new wells turned out to be "dry holes" and when Phillips billed Ratley for the work, payment, like the oil, was not forthcoming.

The agreement under which Phillips furnished the services and materials described was entirely oral and provided for charges to

be made on a unit basis; for example, drilling was to cost $3 per foot and core samples were to be obtained at a cost of $150 each. Phillips sent Ratley periodic invoices for services and materials throughout the course of the work, none of which were paid. On September 20, 1978, Phillips and Ratley conferred and agreed that the total amount owing from Ratley to Phillips was $9,850.94. At this same conference, Phillips offered to discount this sum $2,000 if Ratley paid the balance in full during the month of October 1978. When Ratley still did not pay, Phillips filed suit for the total amount due, together with "service charges" of 1½% per month (18% per annum). Ratley answered, denying he owed the sum claimed and alleging (1) that the materials and services furnished were defective and (2) that certain implied warranties had been breached by Phillips.

Following a bench trial, the trial court entered its memorandum decision (1) granting judgment to plaintiff for the principal sum of $9,850.94, (2) finding that Phillips was entitled to interest at the rate of 1½% per month and (3) requesting counsel to submit a journal entry containing calculations reflecting the amount of interest due at that rate. Thereafter, counsel agreed on a form of journal entry whereby Phillips was granted judgment, including both principal and accrued interest (apparently at the rate of 1½% per month), in the total amount of $11,467.39. The journal entry also provided that this total judgment sum was to accrue interest at the rate of 8% per annum until paid. From this judgment Ratley has appealed, raising three principal issues for our consideration.

Ratley's first contention here is that the trial court failed to make adequate findings of fact and conclusions of law. No objection was made by Ratley to the trial court's memorandum and journal entry of judgment prior to this appeal. As we held in *Burch v. Dodge,* 4 Kan. App. 2d 503, Syl. ¶ 2, 608 P.2d 1032 (1980):

"A litigant must object to inadequate findings of fact and conclusions of law at the trial level so as to give the trial court an opportunity to correct them, or an appellate court may presume the trial court found all the facts necessary to support the judgment."

Furthermore, we have examined the trial court's memorandum and journal entry in this case and believe them sufficient under the controlling statute and rule. See K.S.A. 60-252(a) and Rule No. 165 (225 Kan. lxxii).

Ratley next contends that the trial court erred in not finding in his favor on claims for breach of warranty and defective materials. Although not clearly stated, this claim of error is apparently a challenge to the sufficiency of the evidence to support the following conclusion of the trial court:

"I find that such goods and services were as represented, that no defective materials were furnished, that no used materials were represented to be new, that the services were performed in a good and workmanlike manner, and that there was no unnecessary delay in performing such services."

Ratley's principal complaint with Phillips' services concerned the inadequacy of some of the core samples obtained by Phillips from the new wells which were drilled. Core samples, according to the evidence in this record, can be useful if the well drilled ultimately develops into a producing well. If not, the record discloses, the samples are of virtually no value. Both wells drilled by Phillips resulted in dry holes. Further, Ratley's complaints about the core samples were among those issues resolved by the agreement of the parties on September 20, 1978, when they arrived at an account stated. Although the trial court found, as a matter of law, that this agreement between Ratley and Phillips was unenforceable (inasmuch as Ratley did not actually pay in full during the month of October and obtain the offered discount), we conclude to the contrary. In *Quincy Lumber Co. v. Saia,* 192 Kan. 776, Syl. ¶ 1, 391 P.2d 144 (1964), our Supreme Court defined "account stated" as follows:

"An account stated is an agreement between parties who have had previous transactions, determining the balance due from one party to the other, and a promise, express or implied, by the debtor to pay the balance."

Quoting from *Harrison v. Henderson,* 67 Kan. 202, 72 Pac. 878 (1903), the *Quincy* court held that:

" 'An . . . account stated becomes a new agreement and takes the place of the obligations resting upon either party by reason of the prior account.' " 192 Kan. at 778.

When Ratley and Phillips met on September 20, 1978, and unconditionally agreed upon the sum owing from Ratley to Phillips, an account stated was created. The fact that Ratley did not avail himself of the offered discount by paying promptly—the only conditional part of the agreement—did not affect the validity of the agreement between them settling the account. Additionally, we have examined the trial record and find there substantial

competent evidence supporting the trial court's findings that the services and materials provided by Phillips were not, in fact, defective and did not, in fact, breach any implied warranties. On appeal, a trial court's findings of fact are never disturbed if supported by substantial competent evidence. *City of Council Grove v. Ossmann,* 219 Kan. 120, Syl. ¶¶ 1, 2, 546 P.2d 1399 (1976). For all of these reasons, we find Ratley's second claim of error to be without merit.

Ratley finally contends that the trial court erred in imposing interest at the rate of 1½% per month upon the principal sum due to Phillips. In this contention, we concur. The only basis for the trial court's judgment pertaining to interest is a legend appearing on the reverse side of the various invoices Phillips sent to Ratley. This legend indicated that interest at the rate of 1½% per month would be imposed unless payment was made within thirty days. At the trial, however, it was never proved, nor even alleged, that this legend was ever brought to Ratley's attention or that he ever agreed to it. In fact, Phillips testified that Ratley *had not agreed* to the payment of interest as specified in the legend. Consistent with this testimony, Phillips neither posted nor billed Ratley for any interest until after Ratley failed to honor the account stated agreement of September 1978—despite the fact that billings were sent monthly commencing in June of that year. Notwithstanding these uncontroverted facts in the record, the trial court concluded as a matter of law that the legend alone created an "implied agreement," citing *Henrickson v. Drotts,* 219 Kan. 435, 548 P.2d 465 (1976). In our view, *Henrickson* does not compel the result reached by the trial court. In *Henrickson,* our Supreme Court was presented with a consumer transaction under the Uniform Consumer Credit Code, which relates, *inter alia,* to purchases "primarily for a personal, family, household, or agricultural purpose." K.S.A. 1980 Supp. 16a-1-301(11)(*a*)(iii). The Uniform Consumer Credit Code is a comprehensive act requiring sellers to give consumers several conspicuous disclosures pertaining to finance charges in advance of the imposition of those charges. With this statutory scheme in mind, the court in *Henrickson* remanded that action for trial to determine whether, after the required disclosures had been made, the consumer had agreed, by acquiescence or course of dealings, to the payment of the finance charges imposed by the seller.

Unlike the transactions at issue in *Henrickson,* the transactions at issue here do not relate to the subject matters covered by the UCCC (K.S.A. 1980 Supp. 16a-1-301[11][*a*][iii]), and no written agreement signed by the parties subjecting them to that act (K.S.A. 16a-1-109) appears in the record before us. Predictably, therefore, the conspicuous disclosures pertaining to finance charges, required by the UCCC, were not given by Phillips to Ratley. The rule stated in *Henrickson* is that knowledge of the seller's payment terms (arising perhaps from UCCC disclosures), coupled with acquiescence by the buyer can constitute an agreement to pay the charges imposed. In the case before us, however, there is no evidence that Ratley was ever made aware of Phillips' proposed "service charges" or that he ever acquiesced in or agreed to pay them. Thus, *Henrickson* is clearly distinguishable from the case considered today.

Although in a proper case, as *Henrickson* held, an agreement to pay interest can be implied from (1) a seller's notice to a buyer that interest will be charged on an unpaid account and (2) the buyer's acquiescence therein (through payment, a course of dealings or otherwise), we conclude that in the absence of proof of either knowledge by the buyer of the seller's interest terms or of acquiescence therein on the part of the buyer, no obligation arises to pay interest in accordance with the seller's terms. Compare *Johnson Tire Service, Inc. v. Thorn, Inc.,* 613 P.2d 521 (Utah 1980) (where interest was allowed based upon the buyer's knowledge of the seller's payment terms coupled with a course of conduct indicating acquiescence) with *Teledyne Movible Offshore, Inc. v. C & K Offshore Company,* 376 So. 2d 357 (La. App. 1979) (where interest at the rate stated in seller's invoice was not allowed where no acquiescence or course of dealings was established).

In the absence of an agreement pertaining to interest, sellers furnishing goods and services on open account are entitled to interest as a matter of statute, from "the day of liquidating the account and ascertaining the balance." K.S.A. 1980 Supp. 16-201. The date upon which interest accrues (the statutory "day of liquidating") has been held to be the date on which the account can be definitely ascertained by mathematical computation. *First National Bank v. Bankers Dispatch Corporation,* 221 Kan. 528, Syl. ¶ 5, 562 P.2d 32 (1977). Applying this test to the facts before

us, we conclude that the date upon which interest commenced to accrue was the date the parties reached their account stated, September 20, 1978. Further, we conclude that any interest arguably owing prior to that date was encompassed within the issues resolved by the parties in arriving at the account stated. Accordingly, we hold that the judgment of the trial court should be modified by allowing Phillips interest from September 20, 1978, on the principal sum due at the rate of 6% per annum (the rate then allowed by K.S.A. 16-201) until August 17, 1979, the date of judgment. Pursuant to K.S.A. 1980 Supp. 16-204(*b*), the combined principal and interest owing on the date of judgment accrues interest thereafter at the rate of 8% per annum through June 30, 1980, and at the rate of 12% simple interest per annum thereafter until paid. The portion of the trial court's judgment herein pertaining to interest is reversed and this cause is remanded for the entry of judgment in accordance with this portion. In all other respects, the judgment of the trial court is affirmed.

Affirmed in part and reversed in part and remanded.