438

(660 P.2d 84)
No. 54,299

CONTINENTAL AMERICAN CORPORATION, a Kansas corporation, *Appellant*, v. PACIFIC BALLOON COMPANY, INC., a California corporation, *Appellee*.

*Opinion filed March 17, 1983.*

*Alexander B. Mitchell,* of Sargent, Klenda, Haag & Mitchell, of Wichita, for the appellant.

*Michael Barbara,* of Sawhill & Underhill, of Haysville, for the appellee.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by plaintiff Continental American Corporation from the judgment of the District Court of Sedgwick County in favor of defendant Pacific Balloon Company, Inc., on defendant's counterclaim for a setoff against the judgment in favor of plaintiff. Plaintiff raises one issue on appeal: Did the evidence conclusively establish an account stated?

In August of 1979, plaintiff purchased the balloon assets of Sherwood Medical Industries, a subsidiary of Brunswick Corporation, and with that purchase received a customer list which included the defendant, Pacific Balloon Company, Inc., a California-based business. Plaintiff, as vendor, and defendant, as vendee, entered into a series of purchases and sales of balloons. Their agreement or arrangement had been that plaintiff paid all freight for shipments to defendant. On May 22, 1980, defendant placed a telephone order with plaintiff, calling for shipments of balloons on May 27, June 26, July 28, August 25, September 25,

October 27, and November 24, 1980. The policy at the time the order was made was that plaintiff would pay the freight from the point of manufacture in Willard, Ohio, to defendant's location in Los Angeles, California.

On June 6, 1980, plaintiff wrote a letter to defendant, stating that the previous freight policy was no longer in effect and that beginning July 7, 1980, freight was to be paid by the purchaser (defendant). On June 27, 1980, defendant's attorney wrote a letter to plaintiff's corporate office regarding the change in policy as to freight, and indicated to plaintiff that the change in policy violated the May 22, 1980 agreement. Plaintiff's president, Ted A. Vlamis, responded by letter on July 8, 1980, reiterating that freight would be charged on all of defendant's shipments made after July 7, 1980, including those from the May 22 order. Defendant's president, Lon Neff, called Vlamis to further protest the change in the freight policy. Vlamis reportedly responded by saying "that's the way it is."

During the latter part of July of 1980, plaintiff began billing defendant for freight charges. In addition to other shipments, defendant received forty-two separate shipments of balloons which arose out of the May 22, 1980 order. Each of these shipments was supported by a separate invoice to defendant and the invoices charged freight to defendant in the total amount of $5,270.77. Defendant paid each of these invoices without a renewed objection. Defendant maintained at trial that further protests could have jeopardized future shipments. If the orders were not filled, defendant would have faced the possibility of going out of business.

The last shipment of goods to defendant occurred on December 23, 1980. On February 28, 1981, defendant sent its check to plaintiff in the amount of $1,693.71, claiming a setoff or deduction of $7,152.09 for freight that had previously been billed and paid. Plaintiff refused the check and returned it to defendant. Thereafter, defendant sent a number of other checks to satisfy other outstanding invoices not related to the May 22 order. Thereafter, defendant again submitted its check in the amount of $1,693.71, claiming a $7,152.09 setoff for previously paid freight. This check was also refused by plaintiff and returned to defendant on April 8, 1981. Finally, on May 18, 1981, defendant issued plaintiff its check in the amount of $1,693.71,

with the notation that it was for payment "on account." This check was accepted.

Plaintiff subsequently filed suit to collect the remaining outstanding balance due from defendant. In a trial to the court, the evidence was undisputed that the balance due on the account was $7,152.09. Defendant had, however, argued its position as to a setoff for freight which had been previously paid and unjustifiably charged. The trial court allowed defendant a setoff in the amount of $5,270.77 for freight charges defendant had previously paid on only those shipments arising out of the May 22, 1980 order. The court therefore entered judgment in favor of plaintiff and against defendant for $1,881.32 with interest at the rate of 18% per annum commencing January 23, 1981, until paid, plus the costs of the action.

Plaintiff appeals and contends that the trial court erred in allowing defendant to set off the amount previously paid for freight on the shipments arising out of the May 22, 1980 order because the evidence conclusively established an "account stated." Plaintiff maintains that even though it may have materially altered the terms of the May 22 order by billing freight to defendant for shipments after July 7, 1980, defendant's payment of those invoices and freight charges, together with defendant's repeated promises to bring the account balance current, conclusively establish an account stated. Since defendant acquiesced in plaintiff's insistence that it pay for the freight, plaintiff argues that defendant cannot now be heard to complain. The concept of "account stated" was fully discussed in *Dettmer v. Fulls,* 122 Kan. 98, 99-100, 251 Pac. 396 (1926):

"Was the evidence sufficient to go to the jury, and was it sufficient to establish an account stated?

" 'An account stated is an agreement, express or implied, between parties who have had previous transactions with each other, fixing and determining the amounts due in respect to such transactions, and, when made, such account stated becomes a new agreement and takes the place of the obligations resting upon either party by reason of the prior account.' (*Harrison v. Henderson,* 67 Kan. 202, 205, 72 Pac. 878.)

"An 'account stated' is an acknowledgment of an existing condition of liability of the parties, from which the law implies a promise to pay the balance thus acknowledged to be due. (*The State v. Ill. Central R. R. Co.,* 246 Ill. 188, 241.) It is an agreement between persons who have had previous transactions, fixing the amount due in respect thereto, and a promise to pay the balance. (*Borders v. Gay,* 6 Ga. App. 734; *Allen-West Commission Co. v. Hudgins,* 74 Ark. 468.) An

'account stated' is an account in writing examined and accepted by both parties, which acceptance need not be expressed, but may be implied from the circumstances. (*Leinbach v. Wolle*, 211 Pa. 629, quoting Story's Equity Jurisprudence § 526.) The acceptance need not be in express terms. (*Powell v. Pacific Railroad*, 65 Mo. 658.) It may be inferred from retaining the account a sufficient time without making objection. (*Freeland v. Heron*, 7 Cranch [U.S.] 147, 3 L.Ed. 297; *Patillo v. Allen-West Commission Co.*, 131 Fed. 680.)

"'An account stated is an agreement between parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such balance.' (1 C.J. 678.)

"'The meeting of the minds of the parties upon the correctness of an account stated is usually the result of a statement of account by one party and an acquiescence therein by the other. The form of the acquiescence or assent is, however, immaterial, and may be implied from the conduct of the parties and the circumstances of the case.' (1 C.J. 687.)

"'The statement of the account need not be in writing, nor need the agreement, if oral, be based upon writings evidencing transactions between the parties; and it is no objection that a part thereof is in writing and a part oral. So if the account is stated in writing, it is not necessary that it be signed or acknowledged in writing.' (1 C.J. 682.)

"'An account may become stated also where the statement of dealings between two persons is made out by one of them and submitted to the other, who acquiesces in its correctness and the same result is brought about where the person to whom an account is rendered subsequently acknowledges receipt of it and promises to pay it.' (1 C.J. 688.)"

In *Bonicamp v. McNeely*, 191 Kan. 225, 229, 380 P.2d 348 (1963), the court stated the essential elements of a stated account as:

"[a] meeting of the minds of the parties upon the correctness of the account, and when this is shown, the law implies an agreement to pay. (*Dolman & Son v. Construction Co.*, 103 Kan. 635, 176 Pac. 145; *Harris v. Drenning*, 101 Kan. 711, 168 Pac. 1106; *Harrison v. Henderson*, 67 Kan. 202, 72 Pac. 878.)"

See also *Quincy Lumber Co. v. Saia*, 192 Kan. 776, 391 P.2d 144 (1964), and *Jerry L. Phillips, Inc. v. Ratley*, 6 Kan. App. 2d 157, 627 P.2d 339 (1981).

The trial court found that the May 22, 1980 order constituted a firm commitment on the part of plaintiff to deliver those ordered items without a charge for freight. There is little question but that the June 6, 1980 announcement by plaintiff of a change in the freight policy was contrary to the firm commitment to defendant and constitutes a breach of contract by plaintiff. The trial court further found that all payments of freight made by defendant to plaintiff were made under circumstances which would

cause defendant to lose his source of supply for his business should those payments not be made. Consequently, the trial court found that all of the shipments made by plaintiff to defendant relating in any manner to the May 22, 1980 order were to be without freight charges. A review of the record indicates that the trial court's findings are supported by substantial competent evidence. *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, Syl. ¶ 8, 639 P.2d 29 (1982).

Defendant's counterclaim for a setoff of the paid freight charges amounts to little more than a claim for specific performance of the breached contract. Defendant adequately expressed its position that plaintiff's change in freight policy constituted a breach of contract through a letter written by its attorney. Defendant made payments on the submitted invoices without further protest to insure business survival. Such a practice, under the facts of this case, does not constitute acquiescence by defendant in the correctness of the invoices. We therefore find that plaintiff's allegation that defendant's actions established an "account stated" is without merit.

Affirmed.