961 F.2d 219
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 In re HALL LITHOGRAPHING CO., INC., Debtor.
AMERICAN CAPITAL RESOURCES, INC., Appellant,
v.
HALL LITHOGRAPHING CO., INC., Appellee.
 No. 91-3135.
 United States Court of Appeals, Tenth Circuit.
 April 14, 1992.
 
 1
 Before SEYMOUR and STEPHEN H. ANDERSON, Circuit Judges, and SAM,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 DAVID SAM, District Judge.
 
 
 4
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 5
 Creditor American Capital Resources, Inc. (ACR) appeals the district court's Memorandum and Order affirming the bankruptcy court's determination of the amount of the debt owed ACR by the debtor, Hall Lithographing Co., Inc. (Hall). ACR is in the business of leasing and financing business equipment. Hall is a printing business which initially entered into a leasing agreement with ACR in June 1980 (Lease I). Pursuant to Lease I, Hall was to pay $447,616.00 in thirty-two quarterly installments of $13,988.00 each for certain pieces of equipment. In November 1980, Hall entered into another agreement for the amount of $891,968.00 to be paid in thirty-two quarterly installments of $27,874.00 each in order to obtain additional equipment from ACR (Lease II). Both leases were subject to a supplemental agreement setting forth the terms and conditions for purchase of the equipment at the end of the lease period. Neither lease stated an interest rate.
 
 
 6
 In December 1985, due to Hall's default on both leases, the parties entered into a third agreement in an effort to avoid a foreclosure action (1985 agreement). This third agreement consolidated the debts, changed the quarterly payments to monthly payments, and extended the payment period. The 1985 agreement stated the amount of combined debt still owed by Hall as $503,628.23. The parties agree that this calculation included simple interest of fourteen percent on the debt remaining on Lease I and sixteen percent on the debt remaining on Lease II. The parties entered into yet another agreement in 1987, restating the amount of unpaid debt, but changing the fixed interest rates to one that readjusted at three percent above prime (1987 agreement). The bankruptcy court found, and the parties agree, that neither of the later agreements was intended to compromise an amount in dispute or to change the amounts due under the original lease agreements. Despite these attempts, it appears that all efforts to financially save Hall failed, and it ultimately filed bankruptcy in 1989.
 
 
 7
 Hall apparently objected to the amount of debt stated by ACR in its proof of claim in the bankruptcy proceeding. Following a hearing to determine the amount of the debt, the bankruptcy court determined that (1) the original lease agreements were financing transactions intended to finance a specified amount at a specified interest rate; (2) the original lease agreements were incorporated into the 1985 and 1987 agreements, and these later agreements were also financing transactions; (3) neither of the latter two agreements was intended to compromise and settle an amount in dispute, nor were they intended to abrogate the original lease agreements; (4) ACR used an improper procedure in calculating the amounts due as stated in the 1985 and 1987 agreements; (5) ACR's mistake was unintentional; and (6) the correct amount of debt owed as stated by Hall's expert witness is $184,451.40 plus interest from and after December 10, 1989, rather than the amount of $327,929.66 plus interest as claimed by ACR.
 
 
 8
 On appeal, ACR challenges the decision of the bankruptcy court by asserting (1) the method employed by ACR for calculating the total amount due under both leases, carried forward into the later agreements, was correct; (2) the lease agreements should not be characterized as financing arrangements; (3) the debt amount stated in the 1987 agreement is an "amount stated" and as such is conclusive absent sufficient evidence to overcome prima facie validity; and (4) Hall should be estopped from challenging the amount stated in the 1987 agreement. We review the bankruptcy court's legal conclusions de novo, and affirm the bankruptcy court's factual findings if not clearly erroneous. Citizens Nat'l Bank & Trust Co. v. Serelson (In re Burkart Farm & Livestock), 938 F.2d 1114, 1115 (10th Cir.1991) (citation omitted). After careful review of the record, we conclude that the bankruptcy court's determinations are supported by substantial, competent evidence and are not clearly erroneous or incorrect applications of the law. We affirm.
 
 
 9
 ACR first argues that the bankruptcy court's determination that ACR erred in the method used to calculate the amount of debt owed by Hall is incorrect. Hall's expert witness, Stuart Douthett, testified to the bankruptcy court that at the time of the execution of the original lease agreements, ACR mistakenly applied Hall's first payment principally to interest, rather than treating the payment as a "down payment" to be applied totally to principal. This mistake, according to Douthett, generated incorrect amounts in the amortization schedule created and the amount of interest charged. ACR argues that its vice-president, Thomas Mulligan, who was in charge of the calculations and negotiations surrounding the 1985 and 1987 agreements, is more knowledgable and experienced in the intricacies of these kinds of financing transactions and, therefore, his method of calculation, applying the first payment principally to interest, is correct.
 
 
 10
 The bankruptcy court found the testimony and conclusions of Hall's expert to be more credible. Bankruptcy Rule 8013, which conforms to Fed.R.Civ.P. 52(a), states that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." See Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.), 798 F.2d 396, 399 (10th Cir.1986); see also King Resources Stockholders' Protective Comm. v. Baer (In re King Resources Co.), 651 F.2d 1326, 1336-37 (10th Cir.1980) (trier of fact has right to judge credibility of witnesses and credit one expert opinion over another). The parties agree that it was their intent to have the interest start at the time the agreements were executed, June 30, 1980, and June 1, 1981, respectively. Consequently, if the court had accepted ACR's accounting and calculation as correct, it would follow, as Hall argues, that it would have paid interest on the loans for the three months prior to execution of the loan agreements. ACR argues that this method is customary in the industry. We have no basis for refuting this assertion. However, accepting ACR's procedures as customary does not preclude a determination of incorrectness.
 
 
 11
 ACR further asserts that because the original leases do not state an interest rate, the agreements should not be characterized as financing transactions. The bankruptcy court found, however, that sufficient evidence exists outside the leases to indicate that the leases contained an interest rate and that it was the parties' intent to treat the leases as financing arrangements. We conclude that ACR's argument is further negated by its contention that the "Rule of 78's," a rule applied to home mortgages and similar financing transactions, was the method used to calculate the apportionment of payments to principal and interest.[1] We do not believe ACR's argument regarding the Rule of 78's to be dispositive of the issue in this case. The argument would, however, appear to belie ACR's contention that the agreements were not intended to be financing arrangements.
 
 
 12
 Next, ACR argues that the debt balance stated in the 1987 agreement is an "amount stated" and, regardless of the correctness of the original lease agreements, should be accepted as conclusive and final. Both this court, and Kansas law, support the contention that an "account stated" may be construed as a binding agreement in place of the original.
 
 
 13
 " 'An account stated is an agreement, express or implied, between parties who have had previous transactions with each other, fixing and determining the amounts due in respect to such transactions, and, when made, such account stated becomes a new agreement and takes the place of the obligations resting upon either party by reason of the prior account.' ( Harrison v. Henderson, 67 Kan. 202, 205, 72 Pac. 878 [Kan.1903].)
 
 
 14
 Continental Am.Corp. v. Pacific Balloon Co., 660 P.2d 84, 86 (Kan.Ct.App.1983) (quoting Dettmer v. Fulls, 251 P. 396, 396 (Kan.1926)); see also Kansas Power & Light Co. v. Hugoton Prod. Co., 251 F.2d 946, 948 (10th Cir.1958) (account stated is only prima facie evidence of its correctness). The law will imply an enforceable agreement to pay when the balance owing is stated and agreed upon. Quincy Lumber Co. v. Saia, 391 P.2d 144, 147 (Kan.1964).
 
 
 15
 However, mistake, as well as fraud, error, and omission, is sufficient legal reason for not permitting an account stated to stand as final and conclusive. Kansas Power & Light Co. v. Hugoton Prod. Co., 251 F.2d at 948 (citing Swaller v. Williamson Milling Co., 226 P. 1001, 1008 (Kan.1924)). The bankruptcy court acknowledged that ACR's calculation method may have been its standard procedure and that the mistake was not intentional. Appellant's Br.Attach. 1A at 2. The bankruptcy court further stated: "[t]he court could perhaps base its legal conclusion on the law relating to an account stated. However, the Court determines that the agreements of the parties incorporating the original lease terms allow this court to determine the proper amount of the claim in accordance with 11 U.S.C. § 502(b)." Bankruptcy Court's Order Determining Debt at 2. We agree that under the bankruptcy court's power to determine the amount of the debt as stated in 11 U.S.C. § 502(b), or under the applicable law relating to an account stated, the conclusions of the bankruptcy court were supported by substantial evidence and credible testimony. The decision to credit the testimony of Douthett was within the court's sound discretion and was not clearly erroneous.
 
 
 16
 Finally, ACR argues, in a somewhat general manner, that Hall should be estopped from challenging the amount of the claim.
 
 
 17
 "A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc., 221 Kan. 523, 527, 561 P.2d 792, 795 (1977).
 
 
 18
 Paul v. Monts, 906 F.2d 1468, 1474 (10th Cir.1990) (quoting Harvester, Inc. v. Goodyear Tire & Rubber Co., 606 P.2d 498, 499-500 (Kan.Ct.App.1980)). Our review of the record indicates that ACR has failed to meet its burden of proving that Hall should be estopped from challenging the amount of the debt. See Paul v. Monts, 906 F.2d at 1474.
 
 
 19
 "When reviewing factual findings, an appellate court is not to weigh the evidence or reverse the finding because it would have decided the case differently." In re Branding Iron Motel, Inc., 798 F.2d at 400 (citing Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985)). We can find no cogent reasons in the record which would support a determination that a mistake has been committed. See Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.), 779 F.2d 1456, 1458 (10th Cir.1985). The bankruptcy court was faced with a choice between two permissible views of the evidence and testimony. The court's choice is not clearly erroneous. See Anderson, 470 U.S. at 574.
 
 
 20
 Therefore, the judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 *
 Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The "Rule of 78's" is a method of apportionment of payments customarily used in financing arrangements whereby the initial payments are almost entirely applied to interest. This ratio shifts over the life of the mortgage so that the later payments are applied almost solely to principal. The Rule of 78's has been held nonreflective of actual interest expense for purposes of income tax computation. Prabel v. Commissioner, 882 F.2d 820, 828 (3d Cir.1989)