**RUBY DRILLING CO., INC.,**
Appellant (Plaintiff),

v.

**Sam R. RATCLIFF, a/k/a Sam Ratcliff,**
Appellee (Defendant).

No. 97–267.

Supreme Court of Wyoming.

Dec. 30, 1999.

Representing Appellant: Nicholas H. Carter, Gillette, Wyoming.

Representing Appellee: Haultain E. Corbett and James L. Salmon of Lonabaugh and Riggs, Sheridan, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

GOLDEN, Justice.

Ruby Drilling Co., Inc. (Ruby Drilling) brought suit against Sam R. Ratcliff (Ratcliff) for payment of drilling services. Following a bench trial, the trial court determined Ruby Drilling had failed to credit Ratcliff's account in the proper amount and awarded the statutory interest rate rather than a higher rate claimed by Ruby Drilling.

We affirm.

## ISSUES

Ruby Drilling presents the following issues:

I. Is the evidence sufficient to support the trial court's finding that there was no agreement as to a 12% interest rate between the Appellant and Appellee?

II. Did the trial court err in not recognizing a $9,000.00 credit that Appellant

had given Appellee off the original invoice?

Ratcliff contends the following:

1. Did the District Court correctly rule that the open account Plaintiff sued to collect was liquidated and that interest must be calculated on that account at the statutory rate of 7% as mandated by *Wyo. Stat.* § 40–14–106(e)?

2. Did the District Court correctly conclude that Plaintiff never gave the Defendant a $9,000 credit on his account?

## FACTS

Between 1984 and 1988, Ruby Drilling performed well drilling and related services for Ratcliff. Ratcliff made some payments on his account, and in March, 1988, Ruby Drilling began charging Ratcliff's account 12% interest. Ruby Drilling later indicated interest was being added to the total bill for the previous five months. In a note accompanying a $539.18 payment, Ratcliff indicated he was paying the interest charged and would try to start making payments on the principal along with the interest the following month. The note made no mention of a specific interest rate. On some later statements, no finance charge was added, while at other times interest of 12% or 18% was included. Statements to Ratcliff in March, May and July, 1991, included finance charges of 18% per annum, while statements for August and two in November, 1991, reflected no finance charge. Ratcliff's payments were sometimes credited by Ruby Drilling to the principal of the bill. Besides the note sent with his April, 1988, payment, Ratcliff made no agreement, oral or written, to pay interest at either 12% or 18% on his account.

Ratcliff began brokering leases for Ruby Drilling, and in March, 1991, invoiced Ruby Drilling $9,000 for these services. Ruby Drilling did not pay the $9,000 invoice sent by Ratcliff but stated that amount was deducted from the bill for services Ratcliff owed to Ruby Drilling. Ruby Drilling received an additional invoice for approximately $15,000 from Ratcliff that was not paid or credited against Ratcliff's debt to Ruby Drill-

* Chief Justice at time of expedited conference; retired November 2, 1998

ing. Ratcliff's account with Ruby Drilling at the end of 1991 was approximately $31,000, and Ruby Drilling's accountant advised the company to write the account off as bad debt and no longer carry it on the company's financial books. In May and July, 1992, Ruby Drilling sent Ratcliff statements showing payment of $31,438.71 on Ratcliff's account, although Ratcliff had not made such a payment. On November 22, 1995, counsel for Ruby Drilling sent a letter to Ratcliff requesting payment of $49,756.58. Between the July, 1992, statement showing the account had been paid and the demand for payment in November, 1995, no one from Ruby Drilling ever contacted Ratcliff to inform him the money was still owed. Ruby Drilling followed the demand letter with a complaint on September 10, 1996, to collect the debt owed, and Ratcliff counterclaimed for payment of lease brokerage services.

A bench trial was held on April 18, 1997. Ruby Drilling claimed Ratcliff's $9,000 bill for services was credited against his account at the end of 1991, although Ruby Drilling could not show where in the company's books the credit had been made or how the principal and interest on Ratcliff's account came to total $49,000 by November, 1995. Ratcliff never received documentation from Ruby Drilling indicating he had been credited for his services against his account with Ruby Drilling. Ratcliff testified a fair billing for the work he performed was $6,500, not the $9,000 he had invoiced Ruby Drilling.

The trial court issued a decision letter on May 23, 1997, and ruled there was no specific agreement for the payment of interest and Ruby Drilling's action in charging interest for the period of January 1 through March 31, 1988, waived any interest prior to January 1, 1988; that because there was no specific agreement about interest other than this one time payment, interest after March 1, 1988, should accrue at the statutory rate of 7% per annum; that Ruby Drilling had never credited Ratcliff for the $9,000 in work he performed for Ruby Drilling, but because Ratcliff testified that was actually too much and the proper amount should have been $6,500, Ratcliff should be credited with that amount; that the May 12, 1992, statement showing a zero balance was a mistake and there was never any intent by Ruby Drilling to make an offer; however, because Ruby Drilling had sent that zero balance statement, Ruby Drilling was estopped from collecting interest from the date of that statement until the demand letter was sent in 1995. The trial court also ruled that Ruby Drilling owed Ratcliff $15,586.03 for work done in 1995 and that after all of these credits were made, Ratcliff owed Ruby Drilling $12,647.59 plus interest at 7% from and after December 12, 1995, plus court costs. A final judgment of $14,084.80 was entered against Ratcliff.

## DISCUSSION

 Ruby Drilling challenges the sufficiency of the evidence supporting the trial court's decision not to recognize a $9,000 credit given Ratcliff on his account and awarding interest at the statutory rate of 7% instead of the 12% rate agreed upon by the parties. The standard of review for sufficiency of the evidence requires this Court to assume evidence in favor of the prevailing party is true, giving every favorable inference that may be reasonably drawn from it and ignoring conflicting evidence presented by the unsuccessful party. *McCarthy v. James E. Simon Co.,* 923 P.2d 747, 749 (Wyo. 1996). We will not substitute our judgment for the trial court's findings and judgment of the facts unless they are clearly erroneous or contrary to the great weight of the evidence. *Frost Construction Co. v. Lobo, Inc.,* 951 P.2d 390, 394 (Wyo.1998).

Ruby Drilling contends Ratcliff's payment of 12% interest on the March, 1988, statement constitutes an agreement to pay interest. Relying on *Jerry L. Phillips, Inc. v. Ratley,* 6 Kan.App.2d 157, 627 P.2d 339 (1981), Ruby Drilling argues that a seller's notice to a buyer that interest will be charged on an unpaid account, coupled with acquiescence by the buyer through payment, a course of dealing or otherwise, constitutes an agreement to pay the charges imposed. Absent these factors, however, there is no obligation to pay interest at the seller's terms. *Id.* at 343.

We have previously addressed the issue of applicable interest rates on accounts in *Miles v. CEC Homes, Inc.*, 753 P.2d 1021 (Wyo. 1988). In *Miles*, we acknowledged "an agreement to pay interest can be express or implied." *Id.* at 1028. Ruby Drilling began rendering services in 1984 but charged no interest to Ratcliff's account until March, 1988. Although Ratcliff's note accompanying payment in March, 1988, indicated he would pay the interest charged and begin making principal and interest payments, no specific amount of interest was delineated. No other evidence, either oral or written, supports an agreement to pay interest at either 12% or 18%. Further evidence that the parties had no mutuality of assent concerning the interest rate is seen in Ruby Drilling's sporadic levying of varied interest rates. March, May, and July, 1991, statements included interest charges at 18%, while statements for August and two in November, 1991, reflected no interest charges. Ruby Drilling testified some payments were applied to the principal on the account. Such inconsistency can hardly be said to have established a course of dealing, thereby creating an implied agreement to pay interest. *Id.* We have held the "mere appearance of a provision imposing interest on an invoice or billing statement is insufficient to establish an implied agreement for the payment of interest." *Id.* We do not find Ratcliff's one-time payment of interest to be an agreement to pay interest at 12%.

Wyoming statutes address computation of interest under the Uniform Consumer Credit Code by providing the following:

(e) If there is no agreement or provision of law for a different rate, the interest of money shall be at the rate of seven percent (7%) per annum.

Wyo. Stat. Ann. § 40–14–106(e) (LEXIS 1999). We find the trial court's determination of interest at the statutory rate to be supported by the evidence.

In July, 1992, Ruby Drilling's statement to Ratcliff indicated a zero balance, and not until November, 1995, did Ruby Drilling notify Ratcliff that money was still due and owing on the account. The trial court found interest, at the statutory rate, should begin to accrue after November, 1995, and we agree.

Ratcliff did not receive payment for services rendered to Ruby Drilling or any notice his account was credited on a particular date for these services. Ruby Drilling was unable to demonstrate in the company's financial books where or when the credit was given. Failing any documentation to support a set-off, the trial court correctly determined the credit had not been given. Ratcliff admits $6,500, not the $9,000 he billed Ruby Drilling, is fair value for his services. We affirm the trial court's determination and hold credit must be given Ratcliff's account for $6,500 worth of services rendered to Ruby Drilling.

## CONCLUSION

Substantial evidence supports the trial court's determination of interest on Ratcliff's account at the statutory rate, absent any agreement between the parties, express or implied, to establish a specific rate. Likewise, the trial court's determination that Ratcliff's account had not been credited for services rendered to Ruby Drilling is supported by substantial evidence in the record and is affirmed.